# OCTOBER, 1938.

ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY, A CORPORATION, RESPONDENT, v. SILVER KING OIL & GAS COMPANY, A CORPORATION, APPELLANT.—127 S. W. (2d) 31.

Kansas City Court of Appeals. January 30, 1939.

*Moss H. Silverforb* and *Chas. N. Sadler* for appellant.

*J. W. Jamison* and *Henderson & Deacy* for respondent.

CAMPBELL, C.—Plaintiff, claiming to have an easement upon a strip of land 12½ feet wide off the entire westerly side of lot 209 in Garfield Park, an addition to Kansas City, Missouri, brought this suit seeking a decree ordering and directing defendant to remove obstructions alleged to have been placed on said strip and refrain from placing on said strip any obstruction which would interfere with travel thereon. The cause was tried, decree rendered for plaintiff as prayed, and defendant has appealed.

The documentary evidence shows that in 1889 J. H. L. Faber, the owner of said lot 209, executed a conveyance to the Kansas City, Ft. Scott & Memphis Railroad Company, by the terms of which in so far as is necessary here to state, granted to said railroad company, its successors or assigns, the aforesaid strip of land ''for the sole purpose of allowing the public, who have business to transact with said railroad company on its Garfield Park switch so called, now constructed on its right of way in the rear of said lots, access to and from the same.'' A plat attached to and made a part of the deed shows the strip extends northwest from a public street to the railroad right of way.

The grantee in the Faber deed under date August 12, 1901, conveyed ''without specific description'' all of its property and rights to Kansas City, Ft. Scott & Memphis Railway Company. The latter grantee conveyed ''generally and without any specific description'' all of its property and rights to plaintiff on September 19, 1928. Conradine Otto, through mesne conveyances from Faber, obtained title to said lot 209 in December, 1900. Otto, in 1919, executed an instrument in which it is recited that he assigned to plaintiff's immediate grantor the ''same rights, privileges and authority given and granted'' to the grantee in the Faber deed in and to said lot 209. E. J. Dietrich obtained title to lot 209 through deeds running from Faber. In April, 1934, he conveyed lot 209 and other lots to defendant ''subject to the rights of the Kansas City, Ft. Scott & Memphis Railway Company to parts of said lots as shown by instruments recorded in Book B-2057 at page 59 in the office of the recorder of deeds of Jackson County, Missouri, . . . and except for and subject to the rights of the Kansas City, Ft. Scott & Memphis Railway Company as aforesaid, including the rights of the successor or successors of said railway company, if any.'' The deed recorded in Book B-2057, page 59, ex-

pressly granted all of the rights and privileges conveyed to the grantee in the Faber deed. Defendant in 1930 accepted a lease of the premises from Dietrich which contained a clause similar to the quoted clause in the deed of April, 1934.

The plaintiff in August, 1931, by letter to the defendant, directed it to clear the "twelve and one-half foot strip." In reply to that letter the defendant said it did not recognize plaintiff had "any title rights in any portion of" the ground covered by its lease; that it would allow plaintiff "ingress and egress only on twelve and one-half feet of this ground;" that if the defendant desired or intended "to have any one load or unload anything, we shall confine them to the easement right above referred to and compel them to the use of the twelve and one-half foot strip of property in question." Several other letters of similar import passed between the parties.

Statement of the issues made by the pleadings is necessary to an understanding of the oral testimony.

The petition upon which the cause was tried alleged that plaintiff owned "a certain spur track," sometimes called a "team track," in its yards in Kansas City, Missouri; that it owned for the daily use of the public in going to and from said spur track, a strip of land 12½ feet wide off the entire westerly side of lot 209, which strip had been conveyed to its predecessor in title for the use of the public in obtaining access to said spur and right of way, and for the purpose of providing such of the public as have business to transact with plaintiff on the spur track, a means of access to and from the spur for vehicular traffic; that defendant (the time was not stated) constructed and maintained on the strip a grease-rack, a fence and a sign which obstructed and prevented the use of the strip as a means of access to and from the spur; that the obstruction on the strip harrassed and annoyed persons in driving vehicles to and from the spur and caused plaintiff to sustain great financial loss.

The answer tendered the general issue, denied plaintiff held any title, easement or right in the strip for the use of the public; denied the strip was necessary for the use of persons having business with plaintiff at any of the places mentioned in the petition, and further alleged that any easement plaintiff or its predecessor may have had in the strip had long since been abandoned.

Plaintiff's roadmaster and terminal engineer, A J. Finn, testified that the spur track "referred to' in the deeds'" was called Garfield Team Track Number 2; that he "mapped" the territory between 1926 and 1928; that (we infer) in the latter part of 1930 or early part of 1931 the defendant constructed a grease rack 6 feet wide and 28 feet long in the middle of the strip, and constructed a sign 10 feet high and 16 feet long upon the fence along the westerly side of the strip; that the grease rack and sign were moved from the strip, evidently soon after this suit was brought; that about the time the grease rack and sign

were moved from the strip, a fence was constructed across the northwest end of the strip, which prevented vehicular traffic on the strip. This witness further testified in effect that the obstruction on the strip inconvenienced the public in transacting business with plaintiff upon its several spur tracks in its yards to the north of lot 209.

John Burch, plaintiff's superintendent of terminals, testified that *at the time of the trial,* December, 1935, there was a fence across the northwest end of the strip which prevented vehicles travelling from the strip to plaintiff's yards; that in 1922, 1923 and a part of 1924 the railroad "placed cars on Garfield Team Track daily for unloading. They (the haulers) drove in off of Wyoming (Street) and out onto Southwest Boulevard. . . . They went out through the lot there. I wouldn't be positive whether they stayed within the twelve and one-half foot strip or not. They went out through the lot next to the fence of the Milton Oil Company where the fence is now located. . . . I have seen a good many trucks drive out through that space. I couldn't say they were on the twelve and one-half foot strip.''

Burch further testified that plaintiff or its predecessor, between 1925 and 1930, moved the Garfield track 10 or 12 feet to the north and built a track called the Savage track between the Garfield track and the northwest end of the strip; that the rails of the Savage track were elevated "about a foot above the level of the ground there. . . . Q. So you couldn't drive a truck over that, could you, to get to the Garfield track after that (Savage track) was built in? A. No, you couldn't drive across those tracks.''

Plaintiff's witness, Harman, testified the strip "was open'' for several years prior to 1927, was called "an alley;'' that many vehicles travelled the alley in going to and from the two south tracks north of lot 209.

The defendant's evidence was to the effect it went into possession of lot 209 in July, 1930; that the grease rack did not obstruct travel on the strip and that the grease rack and sign were moved soon after this suit was brought, and that there was no travel on the strip from July, 1930, to the time of the trial in 1935; that during that time haulers used another driveway in going to and from the plaintiff's yards. Three witnesses, for the defendant, testified that the fence across the northwest end of the strip was built in February, 1935. Two of said witnesses stated they built the fence. Photographs taken soon after this suit was brought appear to show there was no fence across the strip. The evidence of both parties shows vehicles did not travel along the strip from sometime in 1930 to the time of trial. So if the fence were not built until in February, 1935, the failure to use the strip as a roadway during that several years was not due to any act of the defendant except during the short period the grease rack occupied a part of the strip. We think the greater weight of the evi-

dence shows the fence across the strip was built in 1935, and not at an earlier time.

Whether or not the failure to use the strip during the time mentioned in and of itself constituted an abandonment of the easement, is a question we need not determine.

The easement granted in the Faber deed and kept alive by the Otto deed was a limited one. The grant is plain and clear in its terms. Under it only the public "who have" business to transact with the railroad company on its Garfield Park switch were allowed to travel along the strip.

The evidence for plaintiff shows the Garfield Park track was moved and the Savage track built prior to the time defendant took possession of lot 209; that the elevation of the latter track was such that a vehicle could not travel from the strip to the Garfield Park track.

We conclude the construction and maintenance of the Savage track for a period of years prior to the time any obstructions were placed on the strip were acts "of such an unequivocal nature as to indicate a clear intention to abandon" any right the plaintiff or its predecessor had in the strip. [St. Louis-San Francisco Ry. Co. v. Dillard, 43 S. W. (2d) 1043.]

"An easement may be extinguished by an act of the owner of the easement which is incompatible with the existence of the right claimed. . . . If the owner of the easement by his own act renders the use of the easement impossible, or himself obstructs it in a manner inconsistent with its further enjoyment, . . . the easement will be considered as abandoned." [19 C. J. 950, 951.]

". . . It generally has been held that if an easement is granted for a particular purpose the right terminates as soon as the purpose for which it was granted ceases to exist." [19 C. J. 954.]

The defendant was a mere lessee at the time it wrote the letters above mentioned. The letters were insufficient to grant to plaintiff easement in the strip. Moreover, plaintiff's action does not proceed upon the theory the letters granted the easement, but upon the theory the easement was granted by the Faber deed. Lot 209 was conveyed to defendant several years subsequent to the institution of this action. The conveyance was made subject to the right of the railroad, "if any." The plaintiff at the time that deed was made had no right in the strip. The easement was granted for a particular purpose, namely, for use by those having business with the railroad on the Garfield track. Hence, construction and maintenance of the Savage track was "incompatible with the existence of the right claimed."

It follows the judgment should be and it is reversed. *Sperry, C.,* concurs.

PER CURIAM:—The foregoing opinion of CAMPBELL, C., is adopted as the opinion of the court. The judgment is reversed. All concur.