**Vander HARRIS, Appellant,**

v.

**CONSOLIDATED SCHOOL DISTRICT NO. 8 C, DUNKLIN COUNTY, Missouri,, a corporation, Respondent.**

**No. 46595.**

Supreme Court of Missouri,

En Banc.

Nov. 9, 1959.

Bradley & Noble, John W. Noble, Charles M. Cable, Kennett, Attorneys for Plaintiff.

Dalton & Treasure, John Hall Dalton, Harold B. Treasure, Kennett, Attorneys for Respondent.

EAGER, Judge.

On March 27, 1954, plaintiff filed suit to quiet title to two acres of land in the

southeast corner of the S½ of the NE¼ of Section 30, Twn. 18 N., R. 9 East in Dunklin County; the land was also described by metes and bounds, in feet. The petition was formal. Defendant is the successor to a common school district known as School District No. 4, Twn. 18, R. 9, Dunklin County. Although the date and other details of the transfer are not shown, no question is raised as to the propriety of the succession by defendant to the rights and title of the former district; we shall, therefore, use the word "District" as referring indiscriminately to either district. The suit involves title to the land, regarded as separate tracts of one acre each, and to a brick school building. Defendant filed an answer denying plaintiff's title, asserting its own, and pleading the Statute of Limitations; in a counterclaim it asserted its title affirmatively and prayed an adjudication of title; it further alleged that the improvements remained personal property. By reply to the answer, and answer to the counterclaim, plaintiff took issue with all affirmative allegations, and asserted title through a quitclaim deed from the heirs of W. G. and Amanda Petty; certain other matters were alleged which, in so far as necessary, will be mentioned later. The trial court found title in the defendant, as will appear more specifically later.

By warranty deed filed for record on May 10, 1898, W. G. Petty and Amanda Petty, his wife, conveyed to the trustees of the school district "one acre out of the southeast corner" of the 80-acre tract in question; the deed also described the land so conveyed, erroneously, by metes and bounds as a tract 108 feet, 9 inches x 108 feet, 9 inches (approximately 100 feet "shy" in each direction); however, since the parties have consistently considered the controversy as one involving that full (south) acre and have so described it, we shall give no further consideration to that error. In the deed from the Pettys the following clause appeared: "This property to remain the property of the parties of the second part so long as they use it for a school site, and when they fail and cease using it it is to revert back and the title is then to be placed to W. G. Petty and his assigns." A frame schoolhouse was constructed and occupied until 1922, when a new brick schoolhouse replaced it. The school grounds had been fenced, at least on the west and north. A public road ran along the east side of the grounds, and a private road along the south side. Shortly after the new building was constructed, Mr. Petty's fence along the north side of the school grounds was moved further north, so as to enlarge the school grounds to two acres; presumably Mr. Petty did this. There was no evidence of any negotiations at that time, or showing what further may have occurred. Thereupon, the school district constructed two brick toilets on that north acre, and continued to use it as a part of the schoolyard until 1951. In the 1930's a "cook shack" and improvised dining room were constructed wholly or partly on this north acre and these buildings were used in a school lunch program. Various playground equipment was installed, such as slides, a basketball court, etc., some of which was on the south acre and some apparently on the north. It was shown without controversy that the school district continuously used the whole tract from about 1922 until classes were stopped in the spring of 1951.

By deed dated January 1, 1934, plaintiff Vander Harris bought the remaining 78 acres of the 80-acre tract and moved there. The description in his deed contained the following clause: "less two acres in the southeast corner thereof for school, * * *." A deed of trust executed by the Pettys in 1925, and a trustee's deed thereunder in 1932 contained similar exceptions, as did also deeds of trust from Harris and his wife in 1934 and 1940. A warranty deed executed by W. G. Petty and his wife, filed August 22, 1925, excepted "two acres in the southeast corner formerly conveyed for school purposes

* * *." Harris has lived just west of the schoolhouse on the 78 acres since 1934.

Since the cessation of classes, about June 1, 1951, the pupils have been transported to the school of defendant at Senath. Such procedure has become an integral part of the contemporary history of rural Missouri. The building has since been used for the storage of miscellaneous materials, such as lumber and windows removed from other buildings, and perhaps seats or benches; the original blackboards, stoves, some seats, and a desk or two remained. Material has been moved in or out as deemed necessary. There was testimony that the building had deteriorated, with windows out, paint needed, and some damage from termites apparent. There was also testimony that the directors of defendant had discussed, as recently as within the year preceding the trial, the possibility of using the building again for classes, and the fact that it was their "last remaining good building"; certain other buildings had been disposed of. One or more directors testified that the board had that possibility in mind in keeping the building, and that it would not keep it permanently for storage only. It further appeared that the board had never applied for a payment of $1,000, which would be payable after abandonment and disposition of the building.

After suit was filed, and about July, 1955, the parties agreed that one Boyd Smith might use one room of the schoolhouse for a grocery on a month-to-month basis, applying the first rentals of $25 per month to the repair of the building or of a portion of it. The arrangement was subject to termination on notice. Apparently Smith so occupied one room to the time of trial and made some repairs. It was further agreed, orally, that evidence of such occupancy should not be considered in the litigation. Thereafter two forms of a written agreement were prepared, but neither was signed by all the parties.

Counsel for plaintiff seem to feel that the failure of the defendant to so sign released the plaintiff from the agreement last mentioned; in any event, evidence of this use came into the case, as did both drafts of the proposed written agreement; each of those forms confirmed the oral agreement that the "lease" should not be construed as an admission and should not be used in the litigation.

A memorandum opinion was filed by the trial court; on motion, it was ruled that this should be "no part of the decree." In the decree itself the court found that, as of the date of filing suit, the south acre was being used as a "school site" and for school purposes, that it had not been abandoned, and that title thereto had not then reverted. It adjudged title thereto to be in defendant, subject to the reverter clause of the Petty deed. It further found and adjudged that defendant had acquired fee simple title to the north acre by adverse possession.

The case was tried without a jury. The title to the south acre depends, essentially, on whether or not defendant has abandoned the property as a school site; title to the north acre depends on whether defendant's use was adverse or merely permissive. Plaintiff also insists that we should determine, independently of the above questions, whether defendant may now remove the school building and whether plaintiff is the owner of the reversionary interest.

There are not many cases in Missouri involving the abandonment of school sites. In the case of Fuchs v. Reorganized School Dist. No. 2, Gasconade County, Mo., 251 S.W.2d 677, cited by plaintiff, land was conveyed for the purpose of maintaining a "public schoolhouse," but there was no reversion clause; it was held that the conveyance was in fee simple, without limitation or condition, and that the purpose stated was a mere expectation. Apparently the case is cited for its reference to the fact that the recital of a nominal consid-

eration of One Dollar (as here) may properly be considered in determining the grantor's intent. In the case of Board v. Nevada School District, 363 Mo. 328, 251 S.W.2d 20, 21 (cited and relied on by both parties), the deed recited that the land was conveyed " * * * for a school house site and whenever it is abandoned by the directors and ceases to be used for that purpose the title shall immediately revert to the grantors herein." Plaintiffs, as heirs, claimed title by abandonment and reverter. No classes had been held in the building since May 1, 1950; the minutes did not show any affirmative abandonment, and certain "4H" meetings had been held in the building. The steps of the building and a portion of the back porch had been taken away for use elsewhere. The court held: that the deed conveyed a fee simple "determinable," wherein the grantors created a possibility of reverter, dependent upon future uncertain events; that the plaintiffs had the burden of proving abandonment; that the facts were "wholly insufficient" to establish a reverter by abandonment. In part, the court said, 251 S.W. 2d loc. cit. 25: "We do not construe the words, 'ceases to be used for that purpose', to mean a mere temporary cessation of the school district to conduct a school on the property. The property did not cease to be used for a schoolhouse site, merely because no school was conducted on the property from May 1, 1950 to May 10, 1951. The matter involves intention as does the matter of abandonment. See, Tillman v. Melton, supra [350 Mo. 155], 165 S.W.2d 684, 687, and cases cited therein. * * * In the case of Anson v. Tietze, 354 Mo. 552, 558, 190 S.W.2d 193, 196, the court said: 'Abandonment is a question of fact, being a mixed question of intention and act—the intention to abandon permanently and the physical act of nonuser— * * *.'" In Tillman v. Melton, 350 Mo. 155, 165 S.W.2d 684, 686, the deed provided for a reverter of the property conveyed "when it ceases to be used for school purposes." From 1933–1940 the children

had been transported to another school; some religious services and other gatherings were held there. A part of the seats had been moved out, but no affirmative action had been taken to abandon the property and, as the court stated, it remained under the "supervision and control" of the district board, pending the time when some "change in policy or conditions might require an active utilization of the building and grounds for school purposes." The court held that the burden of showing abandonment and reverter was on the plaintiff, and that this question involved an element of intent as well as all facts and circumstances; also, that, regardless of where the burden of proof rested, there was evidence to sustain the trial court's general finding which (in its necessary effect) denied a reverter by abandonment. In School District No. 24 v. Mease, Mo. App., 205 S.W.2d 146, a contention of the abandonment of property for "school purposes" was denied where based upon the cessation of classes for most of a school year, the personal property remaining in the building. In considering the abandonment of an easement in Gibson v. Sharp, Mo.App., 277 S.W.2d 672, 679, the court noted that the question involved not merely nonuser, but also an intention to abandon, and that "such intention may be inferred only from strong and convincing evidence." In Donehue v. Nilges, 364 Mo. 705, 266 S.W.2d 553, 45 A.L.R.2d 1150, also cited, there had been a conceded abandonment and a sale of the property, and the case is apparently cited as authority to the effect that the possibility of reverter here descended to Petty's heirs, and that their conveyance to plaintiff vested a present title in him. And see, generally, Smith v. School District No. 6 of Jefferson County, Mo., 250 S.W.2d 795; Chouteau v. City of St. Louis, 331 Mo. 781, 55 S.W.2d 299; White v. Kentling, 345 Mo. 526, 134 S.W.2d 39; Farmer's High School Consol. Dist. No. 3 v. Parker, 240 Mo. App. 331, 203 S.W.2d 516. These cases deal generally with the nature of reverter

interests and determinable fees, but we need not consider them further here.

We have determined that the trial court was correct in holding that no reverter had been shown as of the date of filing suit. The reverter clause, as a whole, must be construed to mean that the property shall revert when, and only when, it is no longer used "for a school site"; the last part of the clause merely says "when they fail and cease *using* it * * *" (without specification of purpose), but we must fairly infer the purpose previously stated. A cessation of use, as so referred to, is not a momentary or casual one; we think that such a clause necessarily implies a thought and intent of permanency in the change. No one could well claim that a cessation of classes for a day, a week, a month, or even for a term, would effect a reverter, if they were to be resumed thereafter. The word "site" normally means "the place where anything is" (Webster's International Dictionary, 2nd Ed.). A "school site" is, therefore, a place where a school is. The dominant issue is whether the building has, with a reasonable prospect of permanency, ceased to be a school, in view of its continued use for school storage, and the considered possibility of its future use for classes. The storage is for a "school purpose," but to us, it seems more important that the district has withheld a decision upon abandonment, with the considered possibility of a renewed use for classes; to that extent, any intent to abandon is negatived. Certainly, such a state of affairs cannot go on indefinitely. We shall not presume to fix any date when abandonment would take place. A school district may not arbitrarily retain title to property under such a conveyance unless it is done in good faith and with some reasonable purpose and intent. We do hold that neither at the filing of the suit nor at the time of the trial had there been a reverter. This, however, is no adjudication for all future times. The use of one room as a grocery concerned

the trial court considerably; it held that the evidence was not competent because the pleadings had not been amended to show a reliance thereon as an abandonment. This was a suit to ascertain and adjudicate title; the petition was merely a formal one; in fact, the allegations of both parties as to title were merely formal, except for some specific allegations, pro and con, concerning the building as a separate item. Under the circumstances we do not feel that it was necessary to amend the pleadings in this particular. It was and is unfortunate perhaps that this evidence was offered in apparent violation of an agreement. However, it is in, and we consider it for whatever it is worth. There is some authority to the effect that a party in a suit to ascertain and determine title may rely upon a title accruing, or events occurring, after the filing of the suit. Lortz v. Rose, 346 Mo. 1212, 145 S.W.2d 385, 387; Barr v. Stone, Mo., 242 S.W. 661, 663. In certain instances this might require amended or supplemental pleadings (McFall v. Murray, 342 Mo. 737, 117 S.W.2d 330). On the merits we do not consider the temporary use of one room of the building as a grocery store as in any way controlling. It is apparent that the district was thereby able to effect some repairs to the building, without expending public money; the occupancy could be terminated promptly on notice. We all know that ordinarily a building is better preserved when occupied than when vacant. Actually, the parties simply agreed to mitigate the loss and damage from deterioration. We hold that such temporary occupancy did not affect the status. If more were needed, we might look to the admitted oral agreement that this occupancy should not affect the present litigation; presumably, that bound the parties plaintiff and defendant. We may note here that plaintiff, in adopting this theory of the materiality and competency of subsequent events (and plaintiff still urges the point here), is also precluded from objecting to our consideration

of such expressed discussions and intentions of the board as may have occurred after suit was filed. We, therefore, hold that as of the date of the judgment there had been no abandonment or reverter.

It remains for us to consider the title to the north acre. That depends primarily on whether defendant's admitted and continuous possession from 1922 (or thereabouts) to 1954 was adverse or permissive. The trial court found fee simple title in defendant by reason of adverse possession for more than ten years. No deed from Mr. Petty conveying this tract had been found; the parties concede, directly or indirectly, that title had been and was in him. Shortly after the new brick schoolhouse was built in 1922, someone moved back the north fence of the school grounds so that the fence then encompassed also the tract referred to here as the north acre. It would seem reasonable to suppose, as one witness said, that Petty did this himself. Thereafter no one objected to the subsequent and continuous use of the whole tract by the school district. It promptly constructed two brick toilets on the north acre, with concrete foundations. In subsequent deeds a tract of two acres "for school," was excluded; in a deed of August, 1925, from the original grantors the two acres were referred to as "formerly conveyed for school purposes." We allude to that description merely as bearing on the nature and intent of the occupancy. The court permitted a daughter of Mr. Petty to testify, over objection, that she had never heard her father say anything about receiving any money for the north acre. Similar evidence from a sister was rejected. This evidence is of so little probative value that we shall not stop to determine its admissibility. It is not claimed here, actually, that the school bought and paid for the north acre, and this evidence would in nowise contradict the theory of an oral gift of the land coupled with adverse possession. The other statement which the witness attributed

to Mr. Petty was not shown to have reference to this north acre.

In Consolidated Dist. No. 4 of Jackson County v. Glandon, 363 Mo. 1, 247 S.W.2d 770, a similar question arose. The school district had been in exclusive possession for many years. As the court noted, there was no evidence to support the contention that the entry was permissive. The court stated, 247 S.W.2d loc. cit. 771: " * * * The record is silent as to the terms under which the school authorities took possession." The court noted also that the conveyance by the district of a strip for the highway was an act of ownership. We do not have that evidence here. But the court also noted that an exception of the school tract in a subsequent conveyance by the school's grantor might be construed as a recognition of ownership. There no taxes were paid on the tract; none are shown to have been paid in our case. The court said, 247 S.W.2d loc. cit. 772: " * * * However, if the plot of ground was given to the school district, possession would be adverse. This court reviewed this question in the case of Hoelmer v. Heiskell, 359 Mo. 236, 221 S.W.2d 142, loc. cit. 145(6–9), where it said: 'Now it is the law of this state that when one is put in possession of lands under a parol gift the possession of the donee is adverse from its inception. Reader v. Williams, Mo.Sup., 216 S.W. 738. The entry under the parol gift discloses the intention which " 'guides the entry, and fixes its character.' Angell on Lim. § 386; Ewing['s Lessee] v. Burnet, 11 Pet. (U.S.) 41 (9 L.Ed. 624)." Vandiveer v. Stickney, 75 Ala. 225; Reader v. Williams, supra; Auldridge v. Spraggin 349 Mo. 858, 163 S.W.2d 1042; Coshow v. Otey, Mo.Sup., 222 S.W. 804; Allen v. Mansfield, supra (108 Mo. 343, 18 S.W. 901); Rannels v. Rannels, 52 Mo. 108.' See also 2 C.J.S., Adverse Possession, § 90, p. 646.

"There is no evidence in this record that would justify a finding that the original taking of possession of the land in question

was by permission. On the contrary, the evidence justifies a finding that it was not."

In Auldridge v. Spraggin, 349 Mo. 858, 163 S.W.2d 1042, cited supra, the court held that possession under a parol gift is adverse and, if continued sufficiently long, confers title; also, that putting one in possession of land under a parol gift is, in itself, evidence of adverse possession. In Feeler v. Reorganized School Dist. No. 4, Mo., 290 S.W.2d 102, the court held, under facts and circumstances somewhat similar to ours, that a school district could acquire fee simple title by adverse possession, and not a mere easement. The facts in the recent case of La Grange Reorganized School District No. R–VI v. Smith, Mo., 312 S.W.2d 135, are so similar as to make the decision highly persuasive, if not controlling. There, as here, the record was essentially silent as to the precise character of the original entry; the tract had been used for normal school purposes for many years, and a new building had been constructed in 1923; there was no proof of any tax payments; classes had ceased at the end of the 1953–1954 term, and the building had been used thereafter for miscellaneous storage, the stored property being of little real value. The court noted that the test lay in the manifest intent of the district to hold in nonrecognition of the right, in those against whom the land was claimed, to terminate the use and possession; and it said, 312 S.W.2d loc. cit. 139: " * * * it can only be said that the trial court's specific findings of fact in favor of the district and its claim of title by adverse possession are so supported by the record that this court could not with confidence make another, contrary finding. Consolidated School Dist. No. 4 v. Glandon, supra; Feeler v. Reorganized Dist. No. 4, supra."

The right of possession conferred by Mr. Petty on the district was not reasonably intended to be a transitory, fleeting, thing; substantial and permanent improvements were promptly erected.

This, in itself, was contrary to any intent to grant or to hold a mere possession at will or by sufferance. Later, other buildings were constructed and removed. It would not be unreasonable to assume that Mr. Petty, having seen the new school building erected and progress being made, decided to donate the additional ground, without deed or condition. However, we need not go that far. We do hold that there is no substantial evidence of an initial permissive use, and that defendant's possession was adverse, originally and thereafter. The district has used the land, openly and notoriously, in every way that it could normally be used by such a school district. Holding as we do that the district had been in continuous and adverse possession for over ten years, and indeed for over thirty years, we may not impose any condition of reverter upon its title as thus acquired. A title acquired through adverse possession permits of no condition or limitation sounding in permission or consent.

The plaintiff insists that we should decide two questions which the trial court declined to rule: (a) whether defendant has the right to remove the school building when it ceases to use the property as a school site, regardless of our present ruling on abandonment; and, (b) will the title to the south acre vest in plaintiff when defendant ceases to use it as a school site?. On (a), he urges that it would be unreasonable to permit removal of the building because the evidence shows that it would cost plaintiff $600 to break up and remove the foundation and to restore the land to its natural condition, so that the removal would cause "substantial damage to the freehold"; there he relies largely upon certain statements made in Board v. Nevada School District, 363 Mo. 328, 251 S.W.2d 20. And it is also urged that this suit partakes of the nature of a declaratory judgment action in which such question may be adjudicated. If we assume the truth of the latter contention, we still would not feel it proper to decide

this question here, for no justiciable controversy now exists. An advisory decree upon hypothetical facts is improper. State ex rel. Chilcutt v. Thatch, Banc, 359 Mo. 122, 221 S.W.2d 172, 176. The defendant has never sought to remove the school building and, at least up to the time of trial, it was the owner of the tract upon which the building stands. In Tillman v. Melton, 350 Mo. 155, 165 S.W.2d 684, the court held that where there had been no reversion of the land it would not rule, in advance, so to speak, upon a possible reversion of the building with the land in the future. Although perhaps the issue is raised more specifically here, we prefer to follow the same course.

The remaining contention, (b) above, is that we should determine and declare that plaintiff is the owner of the possibility of reverter and that he will be the repository of the reverted title if and when the property ceases to be used as a school site. This contention is also made upon the theory that a suit to try title is in the nature of a declaratory judgment action in which all interests, certain or contingent, present and future, should be determined. Plaintiff cites Arcadia Timber Co. v. Harris, Mo., 285 S.W. 428; White v. Kentling, 345 Mo. 526, 134 S.W.2d 39; Evans v. Brussel, Mo., 300 S.W.2d 442. Broadly speaking, this is true, but in practice the principle seems to have been applied chiefly so as to require definitive adjudications of title rather than dismissals or mere formal judgments (Evans, White, supra), and adjudications of such future interests as those of remaindermen (Audsley v. Hale, 303 Mo. 451, 261 S.W. 117, 124; Fountain v. Starbuck, Mo., 209 S.W. 900), or of existing titles acquired after suit filed (Lortz v. Rose, 346 Mo. 1212, 145 S.W.2d 385). Even had this action been filed as a statutory declaratory judgment action it would be subject to section 527.060, RSMo 1949, V.A.M.S., which provides that the court may refuse to enter a declaratory judgment when, if entered, it "would not terminate the uncertainty or controversy giving rise to the proceeding." And the court should be presented with a justiciable controversy "admitting of specific relief by way of a decree or judgment conclusive in character * * * presenting issues ripe for determination * * *." City of Joplin v. Jasper County, 349 Mo. 441, 161 S.W.2d 411, 413. As the cases have stated, there is merely a "possibility of reverter" here; we have held that there has been no abandonment as yet, and no one knows when or whether (within any reasonable period of time) one will occur. Nor do we know who may be the party or parties adverse to the School District when, and if, an abandonment occurs, or what other changes may occur in the meantime. We have determined that under these circumstances we should not presume to give an opinion upon plaintiff's title or interest, which would, of necessity, be more or less of an advisory nature. The parties may note further, however, the case of Donehue v. Nilges, 364 Mo. 705, 266 S.W.2d 553, 45 A.L.R.2d 1150 (cited by plaintiff), its particular facts, and the various authorities there cited.

The findings and judgment of the trial court should be modified so that title to the so-called "south acre" shall be found and adjudged in defendant as of the date of trial, rather than as of the commencement of the action, but upon the terms and to the extent therein stated. Otherwise, the judgment is affirmed. It is so ordered.

Adopted as the Opinion of the Court, en Banc.

HYDE, LEEDY and DALTON, JJ., concur.

STORCKMAN, J., dissents in part and concurs in part in separate opinion.

HOLLINGSWORTH, C. J. and WESTHUES, J., dissent in part and concur in part and concur in separate opinion of STORCKMAN, J.

STORCKMAN, Presiding Judge (concurring in part, dissenting in part).

I cannot agree that evidence was sufficient to establish that the school district acquired a *fee simple title* to the north acre by adverse possession. In my opinion, the school district at most acquired an interest in this tract equivalent to its estate and interest in the south acre.

The south acre was conveyed in 1898 on condition that title would revert to the grantor or his assigns when and if the school district failed and ceased to use the land for a school site. The majority opinion recognizes this reversionary interest and with that holding I fully concur.

In 1922 a new school building was erected on the south acre and the schoolyard fence was moved so as to include the north acre. At that time toilets were erected on the north acre and playground and other equipment have been added. The use made of the north acre has been incidental to and in conjunction with the south acre as a school site.

In my opinion, the use made of the north acre characterizes and limits the estate and interest acquired by the school district in that tract. As I understand the record, there is no showing that the school district's possession in the north acre was such as to evidence a claim of title superior to that granted in the south acre. If the title acquired in the north acre is one of fee simple, then the school district can presently use the land for any purpose or sell it free of restriction. This, in my opinion, would be out of harmony with the facts and circumstances in evidence.

In many respects the use made of the north acre is similar to an easement appurtenant, the south acre being the dominant tenement and the north the servient one. 28 C.J.S. Easements § 4, subd. a, pp. 633–634. In such a case, the school district's estate in the south acre could not be made the subject of a separate grant. 28 C.J.S. Easements § 45, p. 708. Such an easement could be acquired by prescription, 28 C.J.S. Easements § 6, p. 641, which is substantially the same in quality and character as adverse possession, 28 C.J.S. Easements § 10, p. 645. The easement would cease on the termination of the other estate or title. 28 C.J.S. Easements §§ 51 and 54, subd. a, pages 716 and 718; St. Louis-San Francisco Ry. Co. v. Silver King Oil & Gas Co., 234 Mo.App. 589, 127 S.W.2d 31, 33.

In no event would I interpret the school district's possession to be an assertion of title superior to that which it had in the south acre. Whether we look upon the school district's interest in the north acre as an easement appurtenant or a defeasible fee, the result would be the same.

The two acres have been occupied and used as a unit since 1922 when the new school was built. The defendant introduced in evidence a deed executed in 1925 by the original owner of the north and south acres. This deed excluded from the land conveyed the "two acres in the southeast corner formerly conveyed for school purposes." Apparently the purpose of this was to show that the use of the north acre was not permissive as contended by the plaintiff. However, this exhibit also tended to prove that the grantor placed the north acre in the same category with the south acre and the deed to the south acre admittedly had the condition for reverter if the school district failed or ceased to use the south acre as a school site.

In discussing the necessity of a claim of title by the adverse occupant, it is stated in 2 C.J.S. Adverse Possession § 55, p. 573, that: "* * * possession, per se, evidences no more than the mere fact of present occupation by right and a rightful possession is just as consistent with a lesser interest as with a fee interest in the occupant, * * *." Collateral circumstances must be taken into consideration in determining the nature and extent of the interest claimed by the party in possession; the presumption of law will be in favor of the adverse claimant only to the extent shown. Ricard v. Williams, 7 Wheat. 59, 105, 5 L.Ed. 398.

The burden of proving adverse possession was on the school district. Fiorella v. Jones, Mo., 259 S.W. 782, 785 [5]. "The doctrine of adverse possession is to be taken strictly; there are no equities in favor of a person who seeks to acquire the property of another by an adverse holding, and his acts are to be strictly construed." 2 C.J.S. Adverse Possession § 1, pp. 512–513.

"Adverse possession depends on the intent of the occupant, ordinarily manifested by his acts, to claim title and to hold adversely and exclusively." 2 C.J.S. Adverse Possession § 7, p. 519. "There must be an unequivocal claim of ownership to make the possession adverse." Bell v. Barrett, Mo., 76 S.W.2d 394, 396 [2].

In Crismond v. Kendrick, 325 Mo. 619, 29 S.W.2d 1100, 1106 [9], a grantee was in possession for the requisite period of time, but she had gone into possession as a life tenant and the evidence was held insufficient to show that her possession was adverse to the remainderman.

In the present case the circumstances are such that I do not think we can indulge in the presumption that the grantor conveyed or that the school district intended to claim a title in the north acre superior to that by which it held the south acre. There was no express claim by the school district of a fee simple title in the north acre and I would not imply one in these circumstances. The conduct of the school district was consistent with a claim of title of the same kind and character that it had in the south acre.

If the school district's possession of the north acre was of such character as to be adverse to the remainderman, then its possession of the south acre was likewise adverse to the remainderman; but the school district made no such contention.

Having in mind that the burden of proof was upon the school district, and the strict construction that should be given to its acts on which its title by adverse possession depends, I would hold that a reversionary interest exists in both acres. Otherwise, we will have this incongruous result when and if the south acre is abandoned as a school site. The plaintiff will own the south acre which will be separated from the other 78 acres of his farm by the north acre owned by the school district in fee simple. I do not believe the evidence justifies our saying the parties, or either of them, intended any such result. Rather it seems the parties intended the north acre to be the tail that went with the hide.