Bernard M. **KERTZ** and Dorothy Kertz, Appellants,

v.

**ASSOCIATED ELECTRIC CO–OPERATIVE, INC.,** Respondent.

No. WD 37441.

Missouri Court of Appeals, Western District.

July 8, 1986.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 28, 1986.

Wayne E. Schirmer, Moberly, for appellants.

Jack Peace, Phil Hauck, Trenton, for respondent.

Before KENNEDY, P.J., and BERREY, J., and ROPER, Special Judge.

KENNEDY, Judge.

Landowners brought this action for declaratory judgment, seeking a judicial declaration that their land was free of a haul road easement granted to defendant Associated Electric Cooperative, Inc.'s (Associated's), predecessor in title. They appeal from the adverse judgment entered after a trial to the court.

■ We affirm, holding that the successive easement holders' twelve years' delay in putting the easement to use did not work a termination of the easement.

Under date of October 31, 1972 George A. and Carol E. Sundstrom, plaintiffs' predecessors in title, executed to Peabody Coal Company (Peabody), defendant's predecessor in title, a deed conveying an easement for a haul road. The exact language of the deed, so far as pertinent here, is as follows:

> For the payment of One Dollar and other valuable considerations, the receipt of which is acknowledged, the undersigned grants and conveys to the Peabody Coal Company, a corporation, its successors, assigns and lessees, the right and easement [over the lands described below] to construct, improve, use and maintain (by grading, filling, ditching, draining and otherwise) a road for use by Peabody in the movement of persons, vehicles, coal mining equipment, coal and other things incident to the coal mining operations of Peabody, and to install or lay electrical power cables and lines, and telephone lines on, over and above such land and to maintain, remove, replace such lines and to operate them in connection with Peabody's mining operation.
>
> . . . .
>
> Peabody is to have and hold this easement, including the right of ingress and egress to and over the land described (with all the rights and privileges incident to the same, for the coal operations of Peabody, but subject to all reservations, exceptions and conditions covering the lands of the undersigned) *so long as it shall use the property described below for the purposes for which this easement was granted* and then for the removal of its property from such land, and upon removal of all of the property and equipment of Peabody, all right and title to the property shall then revert to the undersigned, and the easement granted here shall end. (Emphasis supplied.)

The land described is a 200-foot strip (approximately 21.2 acres, a part of a larger tract of 190 acres) lying immediately west of a certain highway. It forms one ⅞-mile section of a longer easement extending a distance of 2⅓ miles over the land of several landowners. At the time of acquiring the easement, Peabody had undeveloped coal mining interests lying south and east of the easement. Associated acquired those interests from Peabody along with the easement in 1977, and afterwards acquired other coal mining interests in the area. The enlarged area is known as Huntsville Mine Area # 5. These mining interests remained undeveloped from the time of the easement deed until 1984 or 1985, and the easement holder during that interval did not improve or use the easement.

The present plaintiffs in 1981 purchased from the Sundstroms the 190-acre tract of land upon which the easement was located. There is no question but that plaintiffs had actual and constructive notice of the easement. As their predecessors had done, they cultivated and raised crops on the property including that which was subject to the easement, without interference from Peabody or from Associated. Neither easement holder exercised any rights in the land till 1985, when Associated entered upon the easement and commenced preparation for building a road. That action precipitated the present lawsuit.

Only in 1984 did Associated learn that plaintiffs Kertz challenged its haul road easement. This was after Associated undertook to purchase from plaintiffs an additional 100-foot strip alongside the 200-foot strip described in the deed.

The landowners have asserted no claim of abandonment on the part of the owners of the easement, and have expressly denied any such claim in oral argument. Neither do the landowners claim that their use of the encumbered tract was adverse to the rights of the easement holder.

The landowners focus upon the words "so long as it shall use the property ... for the purpose for which this easement was granted". This language, they say, is decisive of the case. Upon non-use by Peabody and then by Associated for 12 years, that is, from the date of the easement in 1972 until March, 1985, "the easement reverted [1] by its own terms".

We cannot accept landowners' argument. First of all, we cannot isolate the quoted language from the rest of the instrument; it must be read in connection with the other language of the easement deed. We must read the document from its four corners, as the saying goes. *Rutledge v. Union Electric Company*, 280 S.W.2d 670, 672 (Mo. 1955). The other language of the easement

deed clearly contemplates the construction of improvements upon the land by the easement holder, its use as a haul road in connection with a coal mining operation for a greater or lesser period, and a termination of that use and a removal of the easement holders' property and equipment. Only then, by the terms of the instrument, does the easement terminate. Reading the deed as a whole, as we must, the language lends no support for landowners' claim that the easement owners' delay in exercising their rights under the deed worked a surrender of those rights.

■ The landowners rest their case upon a strict interpretation of the isolated language of the deed, which we have highlighted above, and not upon the common law of easements. The language of the deed cannot be read, however, without the law in view as it existed when the contract was made, as the parties are deemed to have had such law in view. The vocabulary of the deed is the vocabulary of the common law cases. The clearest statement of this principle of contract construction is found in 4 S. Williston, *A Treatise on the Law of Contracts* § 615 (3d ed. 1961):

> "It is true that parties ... are presumed to contract with reference to existing law. But reference to such law is generally effected in cases of contract 'construction,' i.e., determination of the unexpressed implications of what is written, rather than in instances of 'interpretation' of the written language.... With respect to the process of interpreting contractual language, statutes and common principles are only part of the surrounding circumstances, and should be so considered."

The common law cases agree with and lend support to the construction we have placed upon the deed language. Mere non-use, unaccompanied by circumstances constituting abandonment,[2] the cessation of the pur-

---

1. An easement is not an estate in land and it does not "revert". It ceases to exist. *Brown v. Weare*, 348 Mo. 135, 152 S.W.2d 649, 655 (1941); 2 G. Thompson, Commentaries on the Modern Law of Real Property, § 440 (1980).

2. *Franck Bros., Inc. v. Rose*, 301 S.W.2d 806 (Mo.1957); *Hatton v. Kansas City C. & S. Railway Co.*, 253 Mo. 660, 162 S.W. 227, 232 (1913); *Denning v. Manley*, 610 S.W.2d 51 (Mo.App. 1980).

pose for which the easement was given,[3] or some other similar circumstance which would give to the non-user a terminal character, does not terminate an easement. No such circumstances appear in the case before us. In fact, the purpose of the easement, that is, to serve the coal mining operation, continued. The easement owners continued to own the coal land and continued to look toward the actual mining of the coal in due time, though the mining was delayed.

The foregoing conclusion that the easement was not terminated by non-use is *a fortiori* correct because the easement was purchased for a valuable consideration. Peabody, the original grantee of the easement, paid the landowners' predecessors in title $8,000 for the easement in 1972. As the principle is stated in II *American Law of Property*, Easements, § 8.67 [4]: "Hence, to an extent incapable of exact definition, the scope of an easement is narrower if gratuitously created than if paid for", *citing Restatement of Property*, § 483, comments f, g, and h (1944).

We have examined the authorities cited by the landowners. While those authorities iterate some general principles which are undisputed and indisputable, they deal with factual situations and language which are much different from those before us. They do not support landowners' position.

Landowners complain of the trial court's admission into evidence of certain documents showing Associated's continuing internal plans and studies for the development of the coal reserves served by the easement. We do not rule this admissibility question. We rarely reverse a judgment in a court-tried case because of improper admission of evidence. We assume the trial court did not consider improperly admitted evidence.[5] Setting aside the challenged evidence in this case, we would still affirm under the review standards of *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976).

Judgment affirmed.

All concur.

---

3. *Ball v. Gross*, 565 S.W.2d 685, 689 (Mo.App. 1978); *St. Louis-San Francisco Railway Co. v. Silver King Oil & Gas Co.*, 234 Mo.App. 589, 127 S.W.2d 31, 33 (1939).

4. The section reads in full as follows:

§ 8.67.—Lack of Consideration as a Factor in Construction. In ascertaining the meaning of a conveyance for the purpose of determining the *scope of an easement created by it*, account should be taken of the nature of the conveyance as being gratuitous or based upon a consideration. The fact that a conveyance is gratuitous is of some weight in limiting the scope of the easement. In the case of a non-gratuitous conveyance greater weight must be given to the expectations of the grantee than in the case of a gratuitous conveyance. A grantee who has paid for a conveyance is entitled to have his reasonable expectations taken into account in determining the meaning of the conveyance. Although the intention sought is that of the grantor, since his words are being construed, he is bound not merely by what he actually intended by his words but also by what they meant to the grantee in so far as that meaning could reasonably have been anticipated. In the case of a gratuitous conveyance, less account need by taken of the meaning of the conveyance to the grantee. He has paid nothing for it and its language was not, at least to the same extent as in the conveyance for which he has paid, intended to produce action on his part favorable to the grantor. Hence, to an extent incapable of exact definition, the scope of an easement is narrower if gratuitously created than if paid for.

5. *McClelland v. Williamson*, 627 S.W.2d 94, 99 (Mo.App.1982); *Spielberg Manufacturing Co. v. Direct Sales International, Inc.*, 566 S.W.2d 839, 840 (Mo.App.1978).