[File No. 6569.]

STUTSMAN COUNTY, a Public Corporation, Respondent, v. BOWMAN COUNTY, a Public Corporation, and Clair K. Skeel, and His Wife, Lavina Skeel, and Three Minor Children, Glenden Skeel, Jean Skeel and Louis Skeel,

and

BOWMAN COUNTY, a Public Corporation, Appellant.

(283 N. W. 179.)

Opinion filed December 31, 1938.

*M. S. Byrne,* State's Attorney, for appellant.

C. S. *Buck, Jr.*, Assistant State's Attorney, for respondent.

MORRIS, J.   This action is brought by Stutsman county against Bowman county, Clair K. Skeel, and his wife and three minor children.   The plaintiff seeks to have the Skeels declared to be poor persons and public charges of Bowman county, and to have them removed to that county.   The case was tried to the court without a jury.   The court found that the Skeels were residents of Bowman county and directed their removal thereto.   Bowman county alone appeals.

The respondent has raised a question of procedure by making a motion in this court that the appeal be dismissed upon the ground "That the Notice of Appeal in said action was not served upon the plaintiff or any person in its behalf within twenty (20) days after the service of the Notice of Entry of Judgment as is provided by law."

The notice of entry of judgment was served April 21, 1938.   The notice of appeal was served on the 9th day of August, 1938.   The respondent contends that Bowman county had but twenty days within which to appeal because of § 15, chapter 97, N. D. Session Laws 1933, which provides, "If any poor person is ordered removed to another county, or to another state, he may within twenty days after the service of such order of removal, appeal from the order of the district court ordering such removal to the supreme court, and such appeal shall be taken, tried and determined as in other cases of appeal from the judgment of the district court in cases tried without a jury, and

the order of removal may be vacated or affirmed according to law and the right of the cause."

The appellant contends that it had six months in which to appeal because in § 2 of the aforesaid act it is said that, "Except as otherwise provided in this Act such suits and proceedings, including the service of process, shall be governed by the provisions of the Code of Civil Procedure."

An examination of chapter 97, N. D. Session Laws 1933, as amended by chapter 119, N. D. Session Laws 1935, discloses two forms of proceeding that may be resorted to depending upon the nature of the controversy. Section 13 deals with the determination of the residence of an indigent for poor relief purposes when there is a controversy between counties with respect thereto. This section provides in part, "When the question of legal residence of any person who is likely to become a public charge or has become a public charge is an issue between the overseers of the poor in two or more counties and when an agreement cannot be effected, the county commissioners of the county in which said person is then residing may bring action in the district court against the county or counties in which legal residence of such poor person is alleged to be to determine the issue. Such poor person shall also be made a party defendant. The summons in such action shall be in the form prescribed for summons in civil actions except that the defendants shall be required to serve an answer to the complaint within fifteen days after the service of the summons upon such defendants."

To the extent that the procedure applicable to actions brought under this section is not therein specifically provided for, it is governed by the provisions of the code of civil procedure in accordance with § 2 of the same act from which we have previously quoted. Under § 7820, N. D. Compiled Laws 1913, which is a part of the code of civil procedure, an appeal from a judgment may be taken within six months after notice of entry thereof. This provision governs the time for appeal in this case.

The twenty-day limitation upon the right of appeal which is made the basis for respondent's motion is not applicable to actions brought under § 13. Section 14 of chapter 97, as amended, provides for appli-

cation to the district court for an order directing the removal of an indigent to the county of his legal residence.

"Such application for an order for removal to the district court shall be made upon written notice and order to show cause served upon such poor person and such poor person shall be entitled to a hearing thereon before an order of removal is issued. Such application shall state that the person either has or is liable to become a public charge *and that the county of his legal residence concedes his legal residence therein.*"

This procedure is not available to determine controversies between counties as to the residence of an indigent. Such controversies must be litigated in actions brought under § 13.

Section 15, which contains the twenty-day limitation of the right of appeal, deals only with the appeal from an order of removal made pursuant to § 14, and has no application to judgments entered in actions between counties brought under § 13. The motion to dismiss the appeal must, therefore, be denied.

The record discloses the following material facts with respect to the merits. The Skeel family were residents of Bowman county in July, 1936. They had received aid from public funds at various times since 1933. During the fore part of July, 1936, they left Bowman county by automobile arriving in Stutsman county on the 11th or 12th of July. After staying there for three days they went to Canada. In about ten days they left Canada and without returning to North Dakota went to the State of Washington, where they stayed until the latter part of October. They reached Stutsman county again about October 24, and stayed a few days then returned to Bowman county for about a week. They then came back to Stutsman county for two days and went on to Barnes county arriving there November 18, 1936. Clair Skeel obtained a W.P.A. transfer card from Bowman to Barnes county, but never worked on the W.P.A. in the latter county. He applied for poor relief in Barnes county on November 30. On the 2nd day of December 1936, the board of county commissioners of Bowman county executed an instrument known as a residence agreement which recites that Clair Skeel and his family are indigent persons and "are subject to removal and return to the county of Bowman, the place of their legal residence, pursuant to chapter 97, Laws 1933,

and acts amendatory thereof." It is then provided that in order that Clair Skeel and his family may be permitted to live in Barnes county, "That the county of Bowman, hereby undertakes and agrees to provide for and support the said Clair Skeel, and his family with whatever aid, assistance or relief that they may from time to time need or require. Provided further that in case the county of Bowman fails or refuses to discharge its legal obligations for the support of its said family, that then and in that case the District Court having jurisdiction, is hereby authorized upon (10) days notice, to order the removal and return of said Clair Skeel and his family to the county of Bowman, the place of their legal residence."

This agreement was not signed by the county commissioners of Barnes county, although it was returned to them. Relief was furnished by Barnes county under the agreement. On December 30, 1936, relief orders amounting to $15.00 were issued to Clair Skeel for groceries and fuel. These orders were later filled and Bowman county was billed for the $15.00 which it paid. On January 16, 1937, similar relief orders were again issued for $15.00. The fuel order was filled January 26 and the grocery order was filled February 3. Bowman county was again billed for the amount of these orders and did not pay. On January 10, 1937, Mrs. Skeel and three children went to Jamestown in Stutsman county. The husband remained in Barnes county with the household goods until February 27, when he joined the family in Jamestown. On December 20, 1937, Clair Skeel applied to Stutsman county for relief for himself and family. This action was commenced by the service of summons on the Skeels on February 8, 1938, and on Bowman county on February 12.

The trial court found that the legal residence of the indigents involved in this action is in Bowman county for relief purposes. The appellant's contention is succinctly stated in its brief as follows: "In the instant case appellant does not contend that the Skeel family has been a resident of Stutsman county for more than one year; but does contend that from the evidence adduced at the trial that the Skeel family have been voluntarily absent from Bowman county for more than one year immediately preceding the commencement of this action."

It is argued that the Skeel family having been voluntarily absent

from Bowman county for more than a year lost their residence in that county for relief purposes. Appellant's contention is correct as far as the law is concerned, but the facts presented by this record lead the appellant into difficulty. Subdivision 6, § 4, chapter 97, N. D. Session Laws 1933, provides, "Each residence when once legally acquired shall continue until it is lost or defeated by acquiring a new one in this state, or by voluntary absence from the county in which such residence had obtained for one year or more; and upon acquiring a new residence, or upon the happening of such voluntary absence, all former residence shall be defeated and lost, and the provisions of this section shall apply to cases of residence begun to be acquired or lost or defeated, as well heretofore as hereafter. Provided, that if within a year of such removal the county of former residence shall contribute to the poor relief of such person in the county to which he or she shall have moved, such absence from the county or former residence shall not be construed to be voluntary as that term is used in this Act."

Pursuant to this statute this court has held that the legal residence of an indigent for poor relief purposes is lost by voluntary absence from the county in which such legal residence obtained for more than one year. Griggs County v. Cass County, 65 N. D. 608, 260 N. W. 417; Nelson County v. Williams County, ante, 56, 276 N .W. 265; Eddy County v. Wells County, ante, 394, 280 N. W. 667.

Residence within a county does not necessarily mean physical presence within the confines of the county, or even that the abode must at all times remain in the county. Residence for poor relief purposes remains for a year after the abode is changed and longer if within the year the county of original residence furnishes relief. In this case the indigents left Bowman county in July 1936. This action was commenced on February 8, 1938. The appellant argues that they were voluntarily absent from Bowman county during the intervening time with the exception of the period for which relief was actually furnished in December 1937 and January 1938, and that deducting the time for which relief was furnished by Bowman county or by Barnes county under the residence agreement with Bowman county, there is left time greatly in excess of one year, and that absence from Bowman county during the time that relief was not fur-

nished was a voluntary absence. This contention necessitates the construction of the last portion of Subdivision 6 above quoted, and which for a better discernment of its provisions we quote again, "Provided, that if within a year of such removal the county of former residence shall contribute to the poor relief of such person in the county to which he or she shall have moved, such absence from the county of former residence shall not be construed to be voluntary as that term is used in this Act."

The problem of construction applied to this case is whether the Skeel family was voluntarily absent from Bowman county from July 1936 to the time of the commencement of this action, except for the period during which relief was furnished to them in Barnes county under the residence agreement, or does the furnishing of such relief within the year have the effect of continuing the residence in Bowman county so that the absence should be computed from the termination of the relief period.

When the Skeel family applied to Barnes county for relief on November 30, 1936, it became necessary to determine whether or not they were residents of Bowman county. They had left their former home during the previous month of July. A year had not elapsed. For poor relief purposes they were still residents of Bowman county and their application for relief in Barnes county made them subject to removal. In order that physical removal be unnecessary, Bowman county entered into the residence agreement acknowledging Bowman county as the place of legal residence and providing for the support of the indigents at Bowman county's expense. We construe the statute to mean that when the county of an indigent's residence contributes to the poor relief of an indigent within one year from the time the indigent left his county of original residence it has the effect of making the entire period of his absence involuntary up to and including the period for which relief is furnished. This is not only the most reasonable construction to place upon the language of the statute, but it is the most logical rule to apply in view of the situation with which the legislature dealt in enacting the statute. Had the Skeel family been returned by the authorities from Barnes county to Bowman county it could not be contended at some later time that their absence from Bowman county prior to their return could be

considered in determining a later voluntary absence from Bowman county. The purpose of the statute is to save expense and inconvenience to the counties and the indigents that would be necessitated by their removal. When a county of original residence undertakes to support its indigents in another county, the effect is the same as far as residence is concerned as if the indigent was returned to the county of his original residence for support. Applying this rule to the Skeel family we find that they were furnished relief by Barnes county acting as an agent of Bowman county for that purpose pursuant to the residence agreement. The Skeel family were, therefore, residents of Bowman county until the termination of the period for which this relief was granted. Barnes county furnished a relief order of $15.00 on January 16, 1937. As we said in Griggs County v. Cass County, 65 N. D. 608, 260 N. W. 417, supra, "In short, where a dispute arises between counties as to where a certain person has a legal residence for poor relief purposes, the point of time at which computation commences is one month after the time that relief was furnished, and the point of time at which the period of residence commences to run, or the voluntary absence commences to run in favor of one county and against another, is one month from the date on which relief was furnished." According to this computation the Skeel family were residents of Bowman county up to and including February 15, 1937.

The appellant contends that even though Bowman county executed and transmitted the residence agreement to Barnes county that because the county commissioners of the latter county never signed the agreement it should not be considered binding. There is no merit in this contention. The record is clear that Barnes county was about to require the indigents to be returned to Bowman county for relief. When it received the agreement it acted thereon by permitting the indigent family to remain in Barnes county and by furnishing two relief orders. Bowman county acknowledged the validity of this arrangement by paying for the first order. The residence agreement was not only entered into between the counties, but its performance was actually undertaken.

As we have heretofore pointed out, the Skeel family were residents of Bowman county up to February 15 under the statute and by virtue of the relief that was furnished to them. This action was commenced

within one year of that date. At the time of the commencement of the action the indigents had not lost their residence in Bowman county for relief purposes, and it follows that the trial court was correct in holding that Clair K. Skeel, his wife and three minor children, are residents of Bowman county.

Affirmed.

CHRISTIANSON, Ch. J., and SATHRE and NUESSLE, JJ., and HUTCHINSON, Dist. J., concur.

BURR, J., did not participate, Hon. WM. H. HUTCHINSON, Judge of Third Judicial District sitting in his stead.