CITY OF JOPLIN, Appellant, v. JASPER COUNTY.—160 S. W. (2d) 411.

Division Two, May 5, 1942.

442

*Stanley P. Clay* for appellant.

*Ralph Baird,* Prosecuting Attorney, and *C. S. Walden,* Assistant Prosecuting Attorney, for respondent.

 PER CURIAM:—In this action by the City of Joplin against Jasper County a declaratory judgment is sought respecting their correlative rights, duties and obligations to the poor and particularly the indigent sick of Jasper County who are also residents of Joplin, a city of the second class.

The plaintiff's petition, after setting forth the capacities of the parties, specifically pleads Sections 9590-9593 of Article 3, Chapter 55, R. S. Mo. 1939, relating to the support of the county poor. It is then alleged that there are many poor inhabitants, especially sick poor, of Jasper County who are also residents of Joplin, who are unable to support themselves and that on March 20, 1939, the City Council of Joplin "while in conference with the County Court of defendant County, requested the County to relieve, maintain and support such sick poor persons which the County Court declined to do under the guise and pretext the above quoted statute did not require the County to care for sick poor persons residing in the City of Joplin because the city maintained a health officer who was also a Deputy State Commissioner of Health under the statutes." The petition states that the County's refusal to maintain and support such persons is "arbitrary, capricious, unreasonable and illegal" under the statutes and deprives the poor sick of Joplin of their lawful rights. It is then stated that the County's action affects "the rights, status and legal relations of the plaintiff municipality and of all sick and poor inhabitants therein," therefore, a declaration of the rights and duties of the parties under the statutes is asked. The defendant's pleading was a general denial.

The case was tried by the court on an agreed statement of facts which, for the most part, is in the phraseology of the petition with the additional fact that Joplin maintains a Department of Health which has, on occasions, refused medical aid and hospitalization to sick poor of the County who were also residents of the City. "That the same has been refused by both the City and County because of a lack of knowledge or misunderstanding on the part of all officers

as to whom should treat and attend sick patients. That because of said conditions, said sick persons have and are now suffering from lack of proper medical care and hospitalization."

The court's decree "finds that the responsibility of furnishing medical aid and medicine for sick, poor persons residing in the City of Joplin, does not exclusively fall upon either the County of Jasper or upon the City of Joplin, but that such responsibility falls equally upon both the County of Jasper and the City of Joplin according to their means and ability to furnish such medical attention and supplies." It was therefore decreed "that there is a dual responsibility because the person is not only a resident of the City of Joplin, but also a resident of Jasper County and the law . . . places a responsibility upon each of performing that function of government so far as funds available will permit them to do in the sound discretion of the officials charged with that particular function of government."

The City of Joplin appeals contending the trial court should have decreed it to be the mandatory duty of the County to relieve, maintain and support such poor people and especially such sick poor and says the settlement of the problem depends solely on the construction to be given Sections 9590-9593, R. S. Mo. 1939.

While the creation, adoption and application of the Declaratory Judgments Act is an epochal achievement, especially for the legal profession, it is not a panaceal legal remedy. It represents a great advance in judicial methods and concepts but it must be used and operate within the limits of the constitutional powers and duties of courts. Its political and social utility, of necessity, lies somewhere between the ideals of its draftsmen and the strict construction of some of the courts. See and compare: Borchard, Declaratory Judgments, and the collections of cases in 9 Uniform Laws Annotated, pp. 215-260; Anderson, Declaratory Judgments; 12 A. L. R. 52; 19 A. L. R. 1124; 50 A. L. R. 42; 68 A. L. R. 110; 71 A. L. R. 1426; 87 A. L. R. 1205; 101 A. L. R. 689 and 114 A. L. R. 1361. Our own motion is that its application must be within the more moderate and yet liberal limits suggested by Judge LAURANCE M. HYDE in 26 Wash. U. L. R. 468, 490-491. As applied to the instant case, no matter how beneficial or socially useful, or urgent, a judicial construction of the laws pertaining to indigents may be to the City of Joplin or to Jasper County or their residents, it is not possible to intelligently declare the correlative rights, duties and obligations of the parties to such people under this record.

The act furnishes a particularly appropriate method for the determination ▇▇▇ of controversies relative to the construction and validity of statutes and ordinances. [Anderson, Declaratory Judgments, Sec. 324, p. 783; Borchard, Declaratory Judgments, pp. 764-801; 16 Am. Jur., Sec. 24, pp. 296-298; Sec. 1127, R. S. Mo. 1939; John Bardenheier Wine & Liquor Co. v. City of St. Louis, 345 Mo. 637; 135 S. W. (2d) 345; School Dist. of Kansas City v. Smith, 342

Mo. 21, 111 S. W. (2d) 167; Smith v. Pettis County, 345 Mo. 839, 136 S. W. (2d) 282.] And it is an appropriate way of determining the powers and duties of various governmental agencies (Borchard, Declaratory Judgments, pp. 798-801, 904) and even the duties of different governmental agencies with respect to the administration of public assistance. [Anderson, Declaratory Judgments, Sec. 253, pp. 656-657.] But, when it is attempted to be so used and a judicial declaration is sought the court must be presented with a justiciable controversy—one appropriate for judicial determination—a case admitting of specific relief by way of a decree or judgment conclusive in character and determinative of the issues involved. [Aetna Life Ins. Co. v. Haworth, 300 U. S. 227, 57 Sup. Ct. 461, 81 L. Ed. 617, 108 A. L. R. 1000; Anderson, Declaratory Judgments, Sec. 8, p. 27; 16 Am. Jur., Sec. 46.] There must be a sufficiently complete state of facts presenting issues ripe for determination before a court may declare the law. "A mere difference of opinion or disagreement or argument on a legal question affords inadequate ground for invoking the judicial power." [Borchard, Declaratory Judgments, p. 77; State ex rel. La Follette v. Dammann, 220 Wis. 17, 264 N. W. 627, 103 A. L. R. 1089.]

Declaratory relief has been asked and given with respect to various political subdivisions and their administration of public assistance, but in each instance the facts were such that the court could pass on them, construe the pertinent statutes and enter a binding, conclusive judgment. For example, in Stutsman County v. Bowman County, 68 N. D. 699, 283 N. W. 179, one county brought a suit against another county, a certain named man, his wife and three children seeking to have them declared poor persons and public charges of the defendant county as residents of that county and thus presented a justiciable controversy. [Contra: Town of Manchester v. Town of Townshend, 109 Vt. 65, 192 Atl. 22.] And so Maricopa County and its Board of Supervisors could sue the Arizona Board of Social Security and Public Welfare and obtain a declaration as to which party was under the duty of furnishing and paying for the quarters to be occupied by the County Board of Social Security. [Maricopa County v. State, 51 Ariz. 372, 77 Pac. (2d) 212.] Or, when all the statutes relating to the welfare activities of various political subdivisions had been repealed and one general statute enacted pertaining to public assistance the court could declare whether the duty to care for the indigent, sick and blind was on the county or solely on the Arizona Board of Social Security and Public Welfare. [Mahoney v. County of Maricopa, 49 Ariz. 479, 68 Pac. (2d) 694.] So Multnomah County could obtain a declaration as to its liability, under the statute, for one-half the administrative expense of the State Relief Committee. [Multnomah County v. Luihn et al., 161 Ore. 160, 88 Pac. (2d) 308.] And taxpayers may have a declaration as to the proper method of apportioning the cost of relief among

towns within a county. [Bradford et al. v. Suffolk County, 15 N. Y. S. (2d) 353.] Or a county may join several cities in a suit for a declaration as to the constitutionality of an act providing for the hospitalization of indigent sick. [Milwaukee County v. City of Milwaukee et al., 223 Wis. 674, 271 N. W. 399.]

On the other hand where the record furnishes insufficient facts from which to determine liability, and advice concerning the respective duties and obligations of the parties is all that is asked, a court will not pass on the respective obligations of an incompetent's husband and the committee for her maintenance. [In re Cornell, 275 N. Y. S. 82.]

█ In the instant case no question is raised as to the validity, constitutional or otherwise, of any statute but a declaration is sought as to the rights and duties of the parties in caring for the poor and especially the sick poor of Jasper County who are also residents of the City of Joplin. In addition to the statutes relied on by the City (Secs. 9590-9593, R. S. Mo. 1939) relative to the county poor it appears there are several other laws relating to the same subject. Article 1, Chapter 57 (Secs. 9733-9759), R. S. Mo. 1939, deals with the State Board of Health and its duties to the sick as well as the poor. Article 6, Chapter 54, R. S. Mo. 1939, deals with █ the support of needy mothers and dependent children, while Article 7, Chapter 54, R. S. Mo. 1939, relates to funds for dependent women, in certain counties. Article 3, Chapter 51 (Secs. 9360-9362), R. S. Mo. 1939, deals with city and county hospitals for the insane, while Article 1, Chapter 126, R. S. Mo. 1939, relates to county hospitals and, in this connection, Sec. 15158 provides that when such a hospital is established "it shall be the duty of such county court to place therein all of the poor persons *that the county court shall deem proper* to place in said county hospital." Charter provisions relating to cities of the second class make the Commissioner of Health a member of the city council and authorize such cities "to provide for the support, maintenance and care of insane and sick poor persons, paupers and the indigent and helpless of the city." They provide for a city physician and the enforcement of all laws and ordinances relating to health. [Secs. 6609 (XXVIII, XLIV), 6655, 6668, R. S. Mo. 1939.] And, doubtless under the authority of these provisions, the City of Joplin has enacted ordinances relative to health and the duties of its city physician. State ex rel. Gilpin v. Smith, 339 Mo. 194, 96 S. W. (2d) 40 and Jennings v. City of St. Louis, 322 Mo. 173, 58 S. W. (2d) 979 give some idea of the problems involved when justiciable issues are presented in actions other than those seeking declaratory relief. There may be other statutes on the same or related subjects which we have not discovered but these are sufficient to demonstrate the overlapping jurisdiction of various agencies and the impossibility, under this record, of determining the relative and respective duties of the parties

to this suit with reference to the indigent sick of Joplin and Jasper County.

While the court's decree is probably all the court could find under the pleadings and agreed statement of facts it is obviously not such a judgment as conclusively and finally disposes of any controversy or issues between the parties. It does not change or affect the legal relationship of the parties. What the court says is more in the nature of reasons for entering a judgment one way or the other rather than a judgment. It is responsive to the issues as raised by the parties, however, in that it attempts to answer a mere disagreement or argument as to a legal question. It is in the nature of abstract advice and does not serve the practical function, contemplated by the act, of stabalizing or settling the relations between the parties.

One section of the act, Sec. 1131, R. S. Mo. 1939, provides as follows:

''The court may refuse to render or enter a declaratory judgment or decree where such judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding.''

This section contemplates that when ''the court has heard all of the facts and has considered all of the legal relations of the parties, it may then refuse to render a declaration of rights if it seems to the court that the basis for relief has been insufficiently established in the exercise of a sound judicial discretion.'' [Anderson, Declaratory Judgments, Sec. 169, pp. 514-522.] And this is true even though the remedy ''is to be liberally construed and administered.'' [Sec. 1137, R. S. Mo. 1939.] It is our opinion, in the instant case, that the court was not confronted with a state of facts presenting ''issues ripe for determination'' in the sense that the facts were not sufficiently developed to admit of a conclusive adjudication. The trial court should therefore have exercised its discretion and dismissed the cause by reason of its failure to present issues which the court could intelligently and conclusively adjudicate. This is an instance of declaratory relief proving inadequate, under the facts and after a trial, and in such instances the court should exercise its discretion and deny declaratory relief. Borchard, Preface to Second Edition, Declaratory Judgments, XI.

The judgment is therefore reversed and remanded with directions to dismiss the cause for such failure. All concur.