The FERGUSON POLICE OFFICERS ASSOCIATION, a not-for-profit corporation, Plaintiff-Appellant,

v.

The CITY OF FERGUSON, Defendant-Respondent.

No. 46696.

Missouri Court of Appeals, Eastern District, Division Three.

April 17, 1984.

David Michael Johnson, Clayton, for plaintiff-appellant.

Alphonse E. Nick, St. Louis, for defendant-respondent.

KAROHL, Presiding Judge.

Plaintiff-appellant Ferguson Police Officer's Association (hereinafter FPOA), a not-for-profit corporation, sought a declaratory

judgment that Article IV, § 29 of defendant-respondent City of Ferguson's Charter was unconstitutional in that it violated the resident members' freedom of speech and association guaranteed by the First Amendment of the United States Constitution and Article I, Sections 8 and 9 of the Missouri Constitution.[1] The FPOA also asked for an injunction preventing enforcement of § 29. Section 29 severely restricted Ferguson employees' political activities regarding city council elections. The trial court found § 29 to be valid, constitutional, and not in violation of the FPOA's rights and denied the FPOA relief.

Plaintiff corporation is a fraternal organization composed of thirty-five of the fifty-nine employees of the Ferguson Police Department. Twenty FPOA members are residents of the City of Ferguson. The FPOA is affiliated with the International Fraternal Order of Police. Among the corporation's stated purposes are the promotion of the welfare of its members and the improvement of its members' working conditions.

Defendant Ferguson is a charter city in St. Louis County. Ferguson's Charter was adopted by the electorate in 1954, and the challenged section has not been amended since adoption. It provides as follows:

> Section 29. ADMINISTRATIVE OFFICERS NOT TO ENGAGE IN POLITICAL ACTIVITY. Neither the City Manager nor any person holding an administrative office or position under his supervision shall, while holding the office or position, be a candidate for City Councilman or engage, directly or indirectly, in sponsoring any person as a candidate for Councilman or in any way electioneer for or against a candidate for Councilman. All such persons shall retain the right to vote as they choose and express their opinions on all political subjects. Any person violating the provisions of this

section shall be removed in the manner provided in this Charter for the removal of persons holding the office or position.[2]

The FPOA sought a declaratory judgment interpreting the Charter provision and finding it unconstitutional insofar as it prohibits Ferguson police officers who are also Ferguson residents from (1) making voluntary contributions of money or something else of value to candidates for city council; (2) making voluntary contributions of time while off duty and out of uniform to the campaign of a candidate for city council; (3) speaking publicly while off duty and out of uniform on behalf of or in opposition to a council candidate. The resident officers contended they should be permitted to speak both literally and figuratively, i.e. to wear buttons and display yard signs and bumper stickers. Police officers who were also Ferguson residents testified at trial that they wanted to take these actions but did not do so because they were afraid they would be fired for violating § 29. Ferguson agreed that it would discipline violators who committed "overt" acts such as those mentioned above.

Our first concern is whether the FPOA had standing to bring the suit.

> [T]he matter of standing does not relate to legal capacity to sue, a defense waived unless timely asserted [Rule 55.27(a)], but to the interest of an adversary in the subject of the suit as an antecedent to the right to relief. It is a matter, in a sense, jurisdictional in limine and so within the notice of a court, even on appeal, for dismissal.

*State ex rel. Schneider v. Stewart*, 575 S.W.2d 904, 909 (Mo.App.1978).

■ Generally the plaintiff must have an interest of its own in the outcome to bring suit. *Crigler v. Frame*, 632 S.W.2d 94, 95 (Mo.App.1982). The regulation at issue

---

1. The FPOA's argument on appeal is based only on alleged First Amendment violations.

2. We have considered § 29 of the Charter in the form alleged in the petition, admitted in the answer, and stipulated to at trial by the parties. The copy of the Charter which was an exhibit at

trial was misplaced, and by agreement of the parties another copy was filed here. Section 29 of the copy filed with this court is not identical to that section as set forth both in the petition and considered here.

here is directed at the political rights of individuals, and it is those individuals whose jobs would be put in jeopardy should a violation occur. *See Wisconsin State Employees Association v. Wisconsin Natural Resources Board*, 298 F.Supp. 339, 343–44 (W.D.Wis.1969). Nevertheless courts have been increasingly willing to allow associations to bring suit as representatives of their members. *United Federation of Postal Clerks v. Watson*, 409 F.2d 462, 469 (D.C.Cir.), *cert. denied*, 396 U.S. 902, 90 S.Ct. 212, 24 L.Ed.2d 178 (1969). In *Citizens for Rural Preservation, Inc. v. Robinett*, 648 S.W.2d 117, 133–34 (Mo.App.1982), the court applied the United States Supreme Court's test for associational standing to a Missouri nonprofit incorporated association.

> A voluntary membership association .... may have standing in one of two ways—either (1) by seeking judicial relief from injuries to its own rights (derivative capacity) or (2) by seeking to vindicate whatever rights its members may enjoy (representative capacity). *Warth v. Seldin*, 422 U.S. 490, 511, 95 S.Ct. 2197, 2211, 45 L.Ed.2d 343 (1975).
>
> ....
>
> The criteria which must be met before an association can bring suit on behalf of its members were summarized and restated by the [United States Supreme] Court as follows: (1) the members must have standing to bring suit in their own right; (2) the interests the association seeks to protect must be germane to its purpose; and (3) neither the claim asserted nor the relief requested must require the participation of individual members in the lawsuit. *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977).

648 S.W.2d at 133.

■ We apply the three criteria taken from *Hunt* to the FPOA to determine whether it is a proper party to bring this suit. Initially, we must determine if the FPOA members themselves could have brought the suit. The possibility of representational standing does not eliminate the need for a justiciable controversy. "The association must allege that its members, or any of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit." *Warth v. Seldin*, 442 U.S. 490, 511, 95 S.Ct. 2197, 2211 (1975).

Although plaintiff's petition alleged only that in the past the members had wanted to participate in elections for council but had not done so, resident members of the organization testified at trial, without objection, of a present desire to perform specific acts with regard to the council election, which they would perform but for the provision of the Charter. The City Charter calls for termination of employees who violate the challenged provision. The city manager indicated that all of the acts proposed by the resident members violated § 29, and that some disciplinary action would be taken for an "overt" violation. Although the City might choose to exercise some discretion in disciplining a particular violator, the Charter called for termination, and the City did not deny that they would take such action in a given case.

■ The plaintiff sought declaratory and injunctive relief. The purpose of the Declaratory Judgment Act "is to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations; and [it] is to be liberally construed and administered." § 527.-120, RSMo 1978; *see also Pollard v. Swenson*, 411 S.W.2d 837, 841 (Mo.App.1967). The broad remedy afforded by the Declaratory Judgment Act, however, does not eliminate the necessity of a justiciable controversy. *City of Joplin v. Jasper County*, 349 Mo. 441, 161 S.W.2d 411, 413 (1942). The plaintiff must present a case in which specific relief can be given in a decision which will be res judicata as to the issues presented. 161 S.W.2d at 413. The individual members request a declaration as to whether the provision prohibits particular political acts and, if so, whether it is consti-

tutional insofar as it forbids the acts. The Declaratory Judgment Act is peculiarly suited to interpreting and declaring the validity of statutes, ordinances and provisions of a charter such as we have here. *See City of Camdenton v. Sho-Me Power Corp.*, 361 Mo. 790, 237 S.W.2d 94, 96 (1951); *City of Joplin v. Jasper County*, 161 S.W.2d at 412–413.

■ "There must be a sufficiently complete state of facts presenting issues ripe for determination before a court may declare the law." 161 S.W.2d at 413. A difference of opinion is not sufficient. *Tietjens v. City of St. Louis*, 359 Mo. 439, 222 S.W.2d 70, 72 (banc 1949). The question in the instant case is how far the officers must go before they have a case ripe for determination. An injury need not have occurred prior to bringing a declaratory action; one of the main purposes of the remedy is to resolve conflicts in legal rights before a loss occurs. *Higday v. Nickolaus*, 469 S.W.2d 859, 863 (Mo.App. 1971); *see also State ex rel. Eagleton v. McQueen*, 378 S.W.2d 449, 452 (Mo. banc 1964); *Marshall v. Kansas City*, 355 S.W.2d 877, 879 (Mo. banc 1962). In the instant case the members contend that the provision violates their First Amendment rights. "Requirements of ripeness are less strictly construed in the first amendment context due to the chilling effect on protected expression which delay might produce." *Planned Parenthood Association of Chicago Area v. Kempiners*, 700 F.2d 1115, 1122 (7th Cir.1983). When the First Amendment is at issue, the injury occurs not only when an employee loses his or her career by challenging the provision and losing, but when countless employees lose their political freedom by obeying an improper regulation until someone successfully challenges it. 13 C. Wright, A. Miller, E. Cooper, Federal Practice and Procedure § 3532 at 251 (1975). *See Dombrowski v. Pfister*, 380 U.S. 479, 486–87, 85 S.Ct. 1116, 1120–21, 14 L.Ed.2d 22 (1965); *Muller v. Conlisk*, 429 F.2d 901, 903 (7th Cir.1970). "Such oppressive present impact should of itself be grounds enough for adjudication unless there are powerful reasons for

avoidance." 13 C. Wright, A. Miller, E. Cooper, *supra*, at 251.

We find no "powerful reasons" to refuse to determine whether the specific acts which the members want to engage in are validly prohibited by the provision in the Charter. Thus the first requirement for associational standing has been met; the members could have brought the suit in their own right.

The second requirement for the FPOA to bring this suit as a representative of its members is that the interests the FPOA seeks to protect must be germane to its purpose. The FPOA strives to promote the welfare of its members and to improve their working conditions. The persons on the city council are the only elected officials in the City. They determine how the City is run and thus the working conditions of the police officers. By giving their members an opportunity to work for candidates it could help promote the candidacy of persons who could improve their members' working conditions. Also, simply by suing to clarify the rights of the officers, to determine what they can and cannot do, the officers will no longer have to take or refrain from taking actions while uncertain of the consequences. Knowledge of what is required of their position and what is not, improves the working conditions and welfare of the officers in general. Restrictions on their political activities are a condition of employment and removing these restrictions if found unconstitutional may improve the employees' working conditions and welfare. The members of the association agreed to bring the suit and feel it is in their best interest to be allowed to participate in council elections.

■ The final requirement for FPOA standing, that the members need not participate individually in the lawsuit to obtain the relief requested, is also met here. The court can determine whether the provision is applicable to specific conduct and whether it is valid without the member's presence. Generally a request for prospective relief, as here, does not require member-

ship participation, in contrast to a case where damages are sought. *Citizens for Rural Preservation, Inc. v. Robinett*, 648 S.W.2d at 134 n. 15.

Having determined the FPOA had standing to bring this suit, we turn to the merits of the case. The members sought the freedom to perform certain acts so long as they were residents of Ferguson: (1) to contribute money or other things of value to candidates for city council; (2) to contribute time while off duty and out of uniform to the campaign of a candidate for city council; (3) to speak publicly, while off duty and out of uniform, on behalf of or in opposition to a candidate for city council. The plaintiff also contends § 29 is vague and overbroad. Ferguson asserted that their employees were prohibited from performing the contemplated acts because of the Charter provision, and that employees would be disciplined for any "overt" violations.

The FPOA did not attack the provision forbidding employees from being candidates for the office of city councilman. The plaintiff asks us to declare the following portion of § 29 invalid insofar as it forbids the previously mentioned activities and because it is vague and overbroad:

> Neither the City Manager nor any person holding an administrative office or position under his supervision shall, while holding the office or position, ... engage, directly or indirectly, in *sponsoring* any person as a candidate for Councilman or in any way *electioneer* for or against a candidate for Councilman. (emphasis added)

We first examine the contention that the provision unconstitutionally prohibits employees from contributing money or other things of value to council candidates. The City asserts that the section forbids such activity, and the Missouri Supreme Court recently upheld a state statute, § 84.830,

RSMo 1978, prohibiting Kansas City police officers from contributing to any political campaign. *Pollard v. Board of Police Commissioners*, 665 S.W.2d 333 (Mo. banc 1984). A restriction which would prohibit contributions only in city council elections would be much less restrictive than that upheld in *Pollard* and would be tailored to meet the needs of Ferguson. *See Wachsman v. City of Dallas*, 704 F.2d 160, 174 (5th Cir.), *cert. denied*, — U.S. —, 104 S.Ct. 537, 78 L.Ed.2d 717 (1983).

The difficulty with § 29 is that it does not mention contributing to campaigns. The section forbids "sponsoring" a council candidate and "electioneering" for such candidate. Unlike the provision upheld in *Pollard* there is no specific prohibition in the regulation here against making a campaign contribution.[3]

Although one who makes a contribution exercises his or her right of association under the First Amendment by joining with a candidate and symbolically expresses his or her support for that candidate, *Buckley v. Valeo*, 424 U.S. 1, 21–25, 96 S.Ct. 612, 635–37, 46 L.Ed.2d 659 (1976), we do not find that the contribution of money, in and of itself, comes under the plain meaning of electioneering. "Electioneer" has been defined as "to take an active part in an election campaign: as *a:* to campaign for one's own election ... *b:* to try to sway public opinion esp. by the use of propaganda," Webster's Third New International Dictionary 731 (1976). Merely contributing money, without more, is not taking an "active part" in a political campaign.

We turn then to the term "sponsoring" in § 29. This term is more ambiguous than "electioneer" as far as its application to political activity. We have examined several definitions:

---

3. *Pollard* upheld § 84.830.1, RSMo 1978, which states, in part, the following: "No officer or employee in the service of said police department shall directly or indirectly give, pay, lend or contribute any part of his salary or compensation or any money or any other valuable thing to any person on account of, or to be applied to, the promotion of any political party, political club, or any political purpose whatever." *See also Wachsman v. City of Dallas*, 704 F.2d 160, 162 (5th Cir.), *cert. denied*, — U.S. —, 104 S.Ct. 537, 78 L.Ed.2d 717 (1983).

SPONSOR. A surety; one who makes a promise or gives security for another, particularly a godfather in baptism.

In the civil law, one who intervenes for another voluntarily and without being requested.

Black's Law Dictionary 1257 (5th ed. 1979).

[1] *Sponsor* ... 1: one who binds himself to answer for another's default: SURETY 2: one who without request intervenes on behalf of another .... 4: one who assumes responsibility for some other person or thing: as *a:* one who presents and supports a legislative proposal

[2] *Sponsor* ... to be or stand sponsor for: accept responsibility for

Webster's Third New International Dictionary at 2204.

*Sponsor* .... To be surety for, to favour or support *strongly.* (Common in recent use.)

II The Compact Edition of the Oxford English Dictionary 2977 (1971) (emphasis added). We cannot say that any of these definitions would include someone making a small contribution to a candidate for the City Council.

■ "[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law." *Connally v. General Construction Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926). The "void for vagueness" doctrine is applicable to civil as well as criminal cases. *Boutilier v. Immigration & Naturalization Service,* 387 U.S. 118, 123, 87 S.Ct. 1563, 1566, 18 L.Ed.2d 661 (1967); *see Broadrick v. Oklahoma,* 413 U.S. 601, 606–608, 93 S.Ct. 2908, 2912–13, 37 L.Ed.2d 830 (1973).

■ In the provision in question the words "sponsoring" and "electioneer" are not defined. We cannot determine from the section whether contributing to a campaign was meant to be included. Although "[i]mpossible standards of specificity are

not required," *State v. Brown,* 660 S.W.2d 694, 697 (Mo. banc 1983), one must be able to make some judgment as to whether or not his or her proposed activity is prohibited. *St. Louis County v. McBride & Son, Inc.,* 487 S.W.2d 878, 879 (Mo.App.1972).

■ The vagueness doctrine not only protects the potential violator's right to notice, it also gives guidelines to those who enforce the regulation to prevent arbitrary and discriminatory enforcement. *Grayned v. City of Rockford,* 408 U.S. 104, 108–109, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222 (1972). Also when vague statutes come close to First Amendment freedoms they inhibit the exercise of those freedoms; individuals inevitably do far less than they would do were the boundaries clearly drawn. 408 U.S. at 109, 92 S.Ct. at 2299. The vagueness doctrine may require greater precision in drafting regulations which affect freedom of expression. *Smith v. Goguen,* 415 U.S. 566, 573, 94 S.Ct. 1242, 1247, 39 L.Ed.2d 605 (1974).

The danger of arbitrary and discriminatory enforcement is present in § 29. The language of the provision is not clear, and the city manager may interpret § 29 as he or she sees fit when a particular situation arises, without the guidance of written regulations. It is up to him or her to determine whether a police officer may contribute to a council candidate. The city manager serves at the pleasure of the city council, and may be replaced at any time. An employee cannot be sure who will be making a decision regarding whether "sponsoring" or "electioneering" include campaign contributions.

■ We find that § 29 cannot be enforced against employees for contributing to city council candidates and that the words "in sponsoring any person as a candidate for councilman" are void for vagueness. We cannot determine what was meant to be included in "sponsoring"— signing a petition to place an individual on the ballot, initiating such a petition and gathering signatures, contributing a small or a large sum of money to the campaign, buying advertisement time for a candidate,

etc. The phrase is not "sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties," *Connally v. General Construction Co.,* 269 U.S. at 391, 46 S.Ct. at 127, and it therefore violates the due process rights of those to whom it may be applied. Where terms or words used in a statute or regulation such as the word "sponsoring" here, are of such uncertainty in meaning, or are so confused that a court cannot determine with reasonable certainty what is intended, the provision is void. *See Prokopf v. Whaley,* 592 S.W.2d 819, 826 (Mo. banc 1980).

Although we have found that campaign contributions are not forbidden under § 29, and that the prohibition against "sponsoring" is void for vagueness, it does not necessarily follow that § 29 is completely unenforceable. *State on the inf. of Wallach v. Loesch,* 350 Mo. 989, 169 S.W.2d 675, 677 (1943). "If the purpose for which an act has been passed can be accomplished without the portion held unconstitutional, the good portion will be permitted to stand, unless it is apparent that the legislature would not have enacted the law without the portion held bad." 169 S.W.2d at 677; *see also Stine v. Kansas City,* 458 S.W.2d 601, 612 (Mo.App.1970). We find the phrase forbidding sponsoring may be severed from § 29 without doing violence to the rest of the provision.

■ We next turn to the other activities in which the resident members of FPOA sought to engage. They wanted to contribute time to the campaign of candidates for councilman and to speak literally and figuratively (through bumper stickers, signs, and buttons), in favor of or against candidates for council. We find that these activities come under the prohibition against electioneering, i.e., taking an active part in an election campaign. They are direct attempts to influence others to support or oppose a given candidate.

■ "[T]he theory that public employment which may be denied altogether may be subjected to any conditions, regardless of how unreasonable, has been uniformly rejected." *Keyishian v. Board of Regents,* 385 U.S. 589, 605–606, 87 S.Ct. 675, 684–85, 17 L.Ed.2d 629 (1967). The United States Supreme Court has made it clear, however, that some restriction on political activity of public employees is acceptable. *United States Civil Service Commission v. National Association of Letter Carriers,* 413 U.S. 548, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973); *Broadrick v. Oklahoma,* 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). The restrictions should be guided by balancing the interests of the employee as a citizen in exercising First Amendment rights and the interest of the government, as an employer, in promoting efficiency and impartiality in public service. *Pickering v. Board of Education,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968).

Although the Missouri Supreme Court in *Pollard* dealt only with monetary contributions, the rationale behind the regulation there applies as well to contributions of time and public expressions of support:

The law seeks to assure persons aspiring to careers in law enforcement that they are not obliged to make public display of political affiliation or defer to the wishes of political dignitaries in order to guarantee retention and promotion ... The statute additionally serves to proclaim that police protection will be available to the public, free from political overtones, and that the police will deal impartially with all who give them concern. The legislature may have had the further thought that ranking police officers might function as political power brokers if they could freely induce contributions from their subordinates. All of these reasons are matters of substantial state interest and concern.

*Pollard v. Board of Police Commissioners,* 665 S.W.2d at 336.

■ Section 29 is narrowly drawn in that it applies only to city council elections. City employees are allowed complete freedom to engage in other political activities. No restrictions are imposed on participation in county, state, or federal campaigns

or advocating a position on other issues in Ferguson. City council members are the only elected officials in Ferguson, and they determine who will serve as city manager and for how long. The city manager, in turn, has control over the termination of city employees. If the City is concerned about pressure being put on police officers to support certain candidates, about control over elections by city employees, about the appearance of bias in the delivery of public services, prohibiting political involvement in city council elections is a logical place to start. The burden placed on the employees is limited, and there is a close fit between the means and the end. *See Wachsman v. City of Dallas*, 704 F.2d at 173–75.

■ Although the United States Supreme Court indicated that restrictions on wearing political buttons or displaying bumper stickers "may be ... impermissible," *Broadrick v. Oklahoma*, 413 U.S. at 618, 93 S.Ct. at 2919, they did not rule on the issue. Such a restriction was subsequently upheld in *Connealy v. Walsh*, 412 F.Supp. 146 (W.D.Mo.1976). A bumper sticker, campaign button, or political poster is a means of expressing a political opinion and therefore protected by the First Amendment. 412 F.Supp. at 154. In *Connealy* a juvenile officer was terminated from her job because she refused to remove a "McGovern" bumper sticker from her car. The court upheld the dismissal largely because of the possible appearance of bias and the potential effect of a display of political affiliation on her relationship with those individuals she was to help. The court emphasized that where the employee's duties "require establishment and maintenance of a relationship of trust and confidence ... the state has a valid interest in prohibiting activities which would adversely affect that relationship." *Connealy v. Walsh*, 412 F.Supp. at 155. The resident police officers here, whether on or off duty, are recognized in the community. As in *Connealy* it is important that the public trust and have confidence in these officers if the department is to successfully per-

form its job. The public must not view police services as being administered according to one's political beliefs. Again, we note that the Ferguson restriction is very limited, applying only to city council candidates.

■ The FPOA also attacks § 29 as being overbroad. Even where a regulation clearly includes the conduct of the plaintiff and may be properly applied to that conduct, the plaintiff may attack it as overbroad because of the chilling effect it has on First Amendment rights. *See Dombrowski v. Pfister*, 380 U.S. at 486, 85 S.Ct. at 1120. "It has long been recognized that the First Amendment needs breathing space and that statutes attempting to restrict or burden the exercise of First Amendment rights must be narrowly drawn and represent a considered legislative judgment that a particular mode of expression has to give way to other compelling needs of society." *Broadrick v. Oklahoma*, 413 U.S. at 611–12, 93 S.Ct. at 2915.

■ We have found that § 29, other than the clause forbidding sponsoring, may be validly applied to several situations. Where there are a substantial number of situations to which the statute or regulation might validly apply, we will not strike down the provision for overbreadth. *United States Civil Service Commission v. National Association of Letter Carriers*, 413 U.S. at 580–81, 93 S.Ct. at 2897–98; *Broadrick v. Oklahoma*, 413 U.S. at 609–618, 93 S.Ct. at 2914–19; *Parker v. Levy*, 417 U.S. 733, 757–762, 94 S.Ct. 2547, 2562–64, 41 L.Ed.2d 439 (1974). If the rights of persons on the edge of the regulation's applicability will be infringed, it will be for them to make the challenge in a concrete dispute. *Paulos v. Breier*, 507 F.2d 1383, 1387 (7th Cir.1974).

We do not find § 29 facially overbroad and leave any contentions that it has been applied so as to infringe upon an individual's First Amendment rights for further litigation.[4]

---

4. The City has indicated it would construe

§ 29's reference to "indirect" conduct as apply-

We uphold § 29's prohibition against electioneering and find that city employees are prohibited under that section from speaking publicly, both literally and figuratively, for or against council candidates, and from contributing time to such candidates. These restrictions apply both on and off duty and in and out of uniform.

Section 29 does not forbid campaign contributions as written. The phrase "in sponsoring any person as a candidate for council" is void for vagueness, and enforcement of that phrase should be enjoined.

Reversed in part and affirmed in part. Cause remanded to the trial court with instructions to enter a judgment consistent with this opinion.

REINHARD and CRANDALL, JJ., concur.

ing to political activities by an employee's spouse. No employees' spouses are before us, and we do not address the constitutionality of this interpretation.