STATE ex rel. Roland E. TRAUTMAN,
Plaintiff/Appellant,

v.

CITY OF FARMINGTON, Missouri,
Defendant/Respondent.

No. 57445.

Missouri Court of Appeals,
Eastern District,
Southern Division.

Nov. 27, 1990.

John C. Livingston, Chesterfield, for plaintiff, appellant.

Gary W. Wagner, Farmington, for defendant, respondent.

GRIMM, Judge.

Plaintiff Roland Trautman appeals the trial court's judgment affirming the decision of the Farmington City Council terminating his employment as police chief. He was terminated for violating provisions of the Farmington Municipal Code and the Police Personnel Manual which restrict the political involvement of police personnel.

Plaintiff raises five points on appeal; however, these can be consolidated into three allegations of error. First, he claims the City Council's decision was unsupported by substantial evidence and was arbitrary and capricious. We disagree; the City Council's action was supported by substantial evidence and, thus, was not arbitrary and capricious.

Second, plaintiff claims the "ordinance and regulations allegedly violated are unconstitutionally vague, uncertain and overbroad and have been unconstitutionally applied." We disagree; the restrictions are narrowly drawn and were constitutionally applied.

Third, plaintiff claims the Council did not submit conclusions of law as required by § 536.090 RSMo., and the Council's Order is "arbitrary, capricious and unreasonable because it does not specify separate discipline for each charge." We disagree; the conclusions of law are sufficient to reveal the basis for the Council's decision.

## I. Background

On June 28, 1988, plaintiff received a "Notice of Proposed Personnel Action." In this letter, plaintiff was charged with violating five sections of the Farmington Municipal Code and Police Personnel Manual.

The following day, plaintiff submitted a written response to the charges. He acknowledged doing certain acts, but denied the acts constituted a violation of the Code or Manual. On July 1, 1988, the Mayor requested plaintiff's resignation. Plaintiff did not resign, so the Mayor recommended to the Council that plaintiff be terminated from his position.

Plaintiff requested a public hearing, which was held on August 18 and September 8, 1988, by the Police Personnel Board. Following the hearing, the Board issued findings of fact and conclusions of law. The Board was unable to reach a consensus as to whether certain actions violated three sections of the Code and Manual; it did find plaintiff violated two sections of the Manual.

The two sections were § 10.10(a)(1)(b) and 10.10(b). Section 10.10(a)(1)(b) prohibits a department member, while on duty and in uniform, from expressing his opinion on political candidates. Section 10.10(b) prohibits a department member from using his official authority, position, or influence for the purpose of affecting the result of an election. The Board recommended plaintiff be suspended without pay for thirty days.

On October 17, 1988, the Council "met and reviewed the transcripts and the Police Personnel Board's Findings of Fact, Conclusions of Law and Recommendation." The Council found plaintiff had violated five sections of the Code and Manual; it voted 6–2 to terminate his employment.

## II. Substantial Evidence

In his first point on appeal, plaintiff contends the Council's decision was not supported by substantial evidence and was arbitrary and capricious. The evidence adduced at the administrative hearing, considered in the light most favorable to the administrative agency, *Edmonds v. McNeal*, 596 S.W.2d 403, 406 (Mo. banc 1980), supports the following factual statement.

In 1986, law enforcement agencies raided a farm belonging to the Lewis family and uncovered an extensive marijuana growing operation. Charges filed by the prosecuting attorney against the Lewises were ultimately dropped, but the incident remained newsworthy.

In the early spring of 1988, the Lewises contacted Vernon Nelson. Nelson was a candidate for Sheriff of St. Francois County in the August primary election; his op-

ponent was the sheriff, Kenneth Buckley. Nelson contacted plaintiff and asked him to help organize a press conference so the Lewises could tell their side of "the story."

In early April, 1988, plaintiff contacted a local newspaper reporter, Candy Burns, and asked if she was "interested in meeting with those involved." She indicated she was. Plaintiff told her "he would get back to [her] when it was confirmed...."

Reporter Burns called plaintiff at least twice "asking if he had set it up yet...." Finally, on June 2, at a local tavern, Reporter Burns again asked plaintiff if he had set up the press conference. Plaintiff replied "We're going to hold off ... until closer to election time."

On June 8, Plaintiff contacted reporter Burns and asked her to arrange a time to meet. She chose Friday morning, June 10, at 9:30. Plaintiff contacted another reporter, Mike Paluck, and arranged to meet them both at a local restaurant.

On the morning of June 10, Candidate Nelson met plaintiff at plaintiff's police department office. The two men then met the reporters at the restaurant; they all traveled to the Lewis farm in plaintiff's unmarked police car.

The meeting at the Lewis farm lasted 1½ to 2 hours. During the interview, Mr. and Mrs. Lewis and their son made numerous allegations against Sheriff Buckley. These charges included statements that they had paid the Sheriff $2,000 a month for about 2 and ½ years for a "permit" to grow marijuana. The Lewises also said they were speaking out "to get an honest Sheriff in there...." Both Candidate Nelson and plaintiff participated in the interview; mostly, they responded to questions by the Lewises or clarified certain statements.

Subsequently, reports of the interview were printed in a Farmington newspaper, The Daily Journal, and in the St. Louis Post–Dispatch. These stories "had a political context...." Although Candidate Nelson and plaintiff had asked the reporters not to mention their names, the reports disclosed they were present at the interview.

At the hearing, a City Councilman testified he had seen tickets to a fund raising dinner for Candidate Nelson on plaintiff's desk. When the Councilman asked plaintiff about the tickets, plaintiff replied "that he was supporting [Candidate] Nelson in his campaign and that's why he had the tickets and he planned to go to the dinner and to do all he could to get him elected."

A Farmington police officer also testified. He stated plaintiff gave him two tickets to Candidate Nelson's fund-raising dinner. The Councilman testified he had also seen these tickets on the police officer's desk.

Our review is limited to determining whether the Council's action is supported by "substantial and competent evidence upon the whole record." *Edmonds*, 596 S.W.2d at 407. The determination of the witnesses' credibility is the function of the administrative tribunal. *Id.* at 408. The fact that the record also contains evidence in conflict with the finding of the Council is not grounds for reversal on appeal. *Id.*

▇ The Council found plaintiff violated five provisions of the Code and Manual. First, it found plaintiff violated Code § 21–29, which prohibits police officers and the chief of police from taking "an active part in a political campaign...." The record contains substantial evidence to show plaintiff took an "active part" in Candidate Nelson's campaign.

It is undisputed that plaintiff arranged for the reporters to attend the Lewis news conference. However, plaintiff disputes the Council's findings that the meeting was scheduled "for the most part, to further the political ambitions of [candidate Nelson]" and that plaintiff "was not totally unaware of the nature of the statements to be made prior to the meeting."

Plaintiff also disputes the Council's finding that he was "on duty" when he drove to the Lewis meeting and "on active duty" when he attended the meeting. We disagree; there is substantial evidence to support the Council's finding that plaintiff was on duty.

Candidate Nelson testified he met plaintiff at the plaintiff's police department office. Both reporters, the candidate, and plaintiff testified they traveled in the plaintiff's police car. And, the meeting took place at 9:30 on a Friday morning, normally a work day. Taken together, the reasonable inference from this evidence is that plaintiff was on duty at the time of the meeting.

Section 21–29 of the Code prohibits police personnel from "taking an active part in a political campaign...." In *Ferguson Police Officers v. City of Ferguson*, 670 S.W.2d 921, 928 (Mo.App.E.D.1984), this court ruled the following activities constituted "taking an active part in an election campaign": contributing "time to the campaign of candidates;" and speaking "literally and figuratively (through bumper stickers, signs, and buttons), in favor of or against candidates...." *Id.*

Here, plaintiff arranged a press conference for the Lewises, whose express purpose was to prevent Candidate Nelson's opponent's reelection. Plaintiff also distributed Candidate Nelson's fund raising tickets to another police officer. The Council found these activities constituted active participation; this finding is not arbitrary and capricious.

There was also substantial evidence to show plaintiff was aware of the political implications of the Lewis meeting. One of the reporters testified that plaintiff told her the "organizers" were delaying the press conference until closer to the election. Both the Police Personnel Board and the City Council found "the said testimony of [reporter] is credible." The reasonable inference from reporter's testimony is that plaintiff knew the Lewis press conference would have political ramifications.

■ Second, the Council found that plaintiff violated Manual § 10.10(a)(1)(b) which provides that a police officer may "[e]xpress his opinion as an individual on political subjects and candidates ...," but the officer must "be off duty and in civilian attire."

The City Councilman testified that plaintiff, on two separate occasions, espoused his support for Candidate Nelson. Plaintiff made these statements in his office. There was substantial evidence to support the Council's finding that plaintiff expressed his opinion about political candidates while on duty.

■ Third, the Council found plaintiff violated Manual § 10.10(a)(1)(c) which provides that a police officer may "[d]isplay on or about his person a political picture, sticker, badge or button or political symbol except during the time for which compensation is received as a member of the department and whenever in uniform identifying him as a member of this department."

The City Councilman testified that plaintiff had fund raising tickets on his desk at the police station. Plaintiff subsequently distributed tickets to a police officer. Candidate Nelson testified the tickets were three by two cards which said "Fundraising dinner for Vernon Nelson, Democratic candidate for Sheriff, [and] had the date, time and location and the price of the ticket." It was not arbitrary and capricious for the Council to find that plaintiff displayed a political symbol on or about his person while on duty.

■ Fourth, the Council found plaintiff violated Manual § 10.10(a)(1)(i) by taking "an active part ... in support of, or opposition to, an *independent* candidate, in a partisan election" without resigning or taking a leave of absence. (emphasis added).

Plaintiff now contends he did not violate this section because Candidate Nelson was the *Democrat* candidate for Sheriff. We disagree.

■ The law favors statutory construction which harmonizes with reason, and which tends to avoid absurd results. *Beal v. Board of Educ., Laclede County School Dist. R–1*, 637 S.W.2d 309 (Mo.App.S.D. 1982). Were we to adopt plaintiff's interpretation of the ordinance, police personnel could participate in political activity of candidates who were affiliated with designated political parties, but could not work on behalf of independent candidates. This would be an "absurd result", not in accord-

ance with the City's stated objective in establishing Manual § 10.10 of "preventing any real or apparent misuse or abuse of a position within the [police] department in the area of political activities."

■ Fifth, the Council found plaintiff violated Manual § 10.10(b) which prohibits a member of the department from using "his official authority, position or influence for the purpose of interfering with or affecting the result of an election."

Plaintiff, while on duty, arranged and participated in the Lewis press conference. The Council could reasonably conclude the purpose of the press conference was to bring about the defeat of the incumbent sheriff, i.e. to "affect the result" of the election for sheriff. There was sufficient evidence to find plaintiff violated this section.

Plaintiff's point is denied.

### III. Constitutional Issue

In his next point, plaintiff contends the Code section and Manual rules are "unconstitutionally vague, uncertain and overbroad and have been unconstitutionally applied." We disagree.

■ Public employees, such as police officers, may appropriately be subjected to some restrictions on political activity. *Pollard v. Board of Police Commissioners*, 665 S.W.2d 333, 339 (Mo. banc 1984). The rationale behind such restrictions was expressed by our supreme court in Pollard.

> The law seeks to assure persons aspiring to careers in law enforcement that they are not obliged to make public display of political affiliation or defer to the wishes of political dignitaries in order to guarantee retention and promotion ... The statute additionally serves to proclaim that police protection will be available to the public, free from political overtones, and that the police will deal impartially with all who give them concern.

*Id.* at 336.

■ We do not find vagueness, uncertainty, or overbreadth to be present here. The Code section and Manual rules are narrowly drawn. Police personnel are permitted to participate in a wide range of political activities, provided they do so while off duty and in civilian attire. The regulations prohibit "active participation" in political campaigns and use of "official authority" to affect the result of an election. The declared purpose of the restrictions is "to give department members the limited right to engage in political activity consistent with the primary objective of preventing any real or apparent misuse or abuse of a position...." "The burden placed on the employees is limited, and there is a close fit between the means and the end." *Ferguson*, 670 S.W.2d at 929.

Further, the regulations are not unconstitutional as applied. The regulations restrict political activity of police personnel while on duty. Plaintiff participated in political activities while on duty. The regulations were not applied in an arbitrary or discriminatory manner. Point denied.

### IV. Conclusions of Law

Finally, Plaintiff alleges the Council "did not submit conclusions of law" and "the order is arbitrary, capricious and unreasonable because it does not specify separate discipline for each charge."

"Missouri courts have generally required that the findings reveal the basis of the decision of an agency." *May Dep't. Stores v. Sup'r of Liquor Control*, 530 S.W.2d 460, 469 (Mo.App.E.D.1975). They "are not required to be made in any particular form or stated with the same degree of formality as required by judicial proceedings." *Greater Garden Ave. v. City of Webster Groves*, 655 S.W.2d 760, 767 (Mo.App.E.D. 1983).

We first observe the Council did make conclusions of law. Plaintiff's real complaint is the conclusions "are not Conclusions of Law."

Here, the findings of fact, conclusions of law, and order consume 12 pages. In addition to making general findings of fact, the Council set out specific factual incidents to support each violation of the regulations. They are in sufficient detail to reveal the basis for the Council's decision.

Further, it was not necessary for the Council to specify separate discipline for each charge. Plaintiff was found to have violated each of the five sections he was charged with violating. A reading of the findings, conclusions, and order clearly shows plaintiff was terminated for political activity in violation of the Code and Manual.

The judgment is affirmed.

SMITH, P.J., and CARL R. GAERTNER, J., concur.